## PEARSON VS. MARTIN.

WARRANTY: (1) *Of coal to be of good quality, and to be as good as certain coal being landed at a place not in existence.*

SUPREME COURT. (2) *Motion to dismiss an appeal for nonconformity to rules 8 and 22.*

1. Where, upon a sale of coal, the vendor warranted that it " should be of good quality, and of as good quality as certain coal then being landed at the mills of Havens " in the same city, this was a warranty of the good quality of the coal, even though it appears that there were no such mills as those described in the terms of the warranty.

2. This court will not entertain a motion by the respondent to dismiss an appeal for the appellant's noncompliance with S. C. Rules 8 and 22, (as to the mode of preparing the printed case), but will make such order as may be proper of its own motion.

APPEAL from the Circuit Court for *Milwaukee* County.

The complaint alleges that on the 15th of October, 1873, the plaintiff sold and delivered to the defendant $340\frac{1510}{2000}$ tons of Straightsville nut coal, of the value, and at the agreed price, including freight and trimmings thereon, of $1,625.39; and that no part of such sum has been paid to the plaintiff. Judgment is demanded for the aforesaid sum, with interest thereon from the aforesaid date, together with the costs of the action. A computation will show that the price per ton demanded is $4.77.

As a defense to the action, the answer sets up the breach of an alleged warranty by the plaintiff that the coal which the defendant agreed to purchase, " was to be of good quality, and of as good quality as the coal there, before the 15th day of October, 1873, and about that time, was being landed at the mills of Havens in the city of Milwaukee." It also alleges that the coal was to be delivered in Milwaukee at $4.20 per ton. The breach of the warranty assigned is, that the plaintiff put on the dock of the defendants in Milwaukee, about October 15, 1873, only 317 1-3 tons " of very inferior and poor coal, not at all equal to the said coal which had been or was being delivered at the mills of said Havens,  *   *   * and not at all equal to the coal contracted to be sold and delivered to him by the plaintiff, and not at all the quantity thereof, and not at all equal to the agreed price of $4.20 per ton, but greatly inferior thereto, and not of the value of to exceed $2.70 per ton." The answer also denies that the coal was delivered to and accepted by the defendant, and contains certain counterclaims for use of dock and for other damages, all of which are based upon such alleged nondelivery and nonacceptance.

The testimony on behalf of the plaintiff tends to prove that the contract was for a cargo of Straightsville nut coal, to be delivered on board at Sandusky at $3.10 per ton, the defendant to pay for trimming vessel, and for freight to Milwaukee; that freight and trimming amounted to $1.67 per ton, which was paid by the plaintiff; and that the quantity of coal delivered under the contract was 338 tons.

The testimony on behalf of the defendant tends to prove the allegations of the answer above stated, except the reference to coal at Havens' mills. But it tends to prove that there was a similar reference to coal at Hayden's mill. It appears that there were no mills in Millwaukee known as Havens' mills, but that one Hayden was interested in a mill there known as the "Cream City mill."

The court refused to submit the question of warranty to the jury, but instructed them to find, first, the quantity of coal delivered under the contract, and second, the contract price therefor, and to determine therefrom the amount due the plaintiff. The jury found the quantity to be to be 338 tons, and the contract price $4.77 per ton, and assessed the plaintiff's damages at $1,726.99, that being the amount of such contract price and interest thereon from the date of the delivery of the coal.

A motion for a new trial was denied, and judgment entered on the verdict. The defendant appealed.

*J. J. Orton*, for appellant, on the question of warranty, cited *Suit v. Bonnell*, 33 Wis., 181; *Smith v. Justice*, 13 id., 600; *Rosebeek v. Monser*, 32 id., 415; 6 id., 295; 12 id., 276; 18 id., 196; 2 Chand., 28.

*Cottrill & Cary*, for respondent, in support of a motion to dismiss the appeal, cited *Akerly v. Vilas*, 23 Wis., 628; *Karasich v. Hasbrouck*, 28 id., 571; *Bigelow v. Goss*, 5 id., 83; *Flint v. Jones*, id., 84; *Wilcox v. Hathaway*, 12 id., 543; *Holmes v. Bruman*, 15 id., 603; *Ingersoll v. Mecklem*, 16 id., 90; *Lloyd v. Frank*, 30 id., 158; and contended that as the defendant's whole defense, both as stated in the answer and as testified to by himself on the

trial, was on a warranty of the coal to be as good as that de-
livered at "Havens' mills," the testimony offered to show the
comparison between the coal delivered and that being delivered
at a mill not known by that name, in which one *Hayden* was a
partner, was irrelevant, and therefore properly excluded.

LYON, J.   The undisputed evidence proves that the coal in
controversy was delivered to, and accepted by, the defendant.
Hence, the counterclaims for damages, all of which are predi-
cated upon the theory that the coal was not so delivered and
accepted, must necessarily fail, and it was not error to exclude
them from the consideration of the jury.

Three issues of fact were made by the answer.   These relate,
1. To the quantity of coal delivered ; 2. To the contract price
therefor ; and 3. To the alleged warranty and breach thereof.
All of these matters are pleaded as defenses to the action in
whole or in part.   The issues of quantity and contract price
were fairly submitted to, and were determined by, the jury.
But the other issue was not so submitted, and has not been de-
termined.   The testimony tends to show that the plaintiff war-
ranted his coal to be of good quality, and that the coal which
he delivered to the defendant was of very poor quality.   True,
the answer alleges that this warranty was accompanied with
the representation or statement that the coal was as good as
that being delivered at Havens' mills, and it appears that there
were no Havens' mills in Milwaukee to which the representa-
tion could be referred, and hence that the quality of the coal
delivered to the defendant could not be tested by comparing it
with the coal at those mills.   Yet we think those facts do not
destroy the warranty, but that it is, nevertheless, a warranty of
good quality, a breach of which will operate to reduce the
damages which the plaintiff would otherwise be entitled to re-
cover.   For illustration, suppose a person who is negotiating
the sale of a horse, says, "I warrant this horse to be perfectly
sound.   I warrant him to be as sound as any horse owned by

C. D.", and one purchases relying upon the warranty. It turns out that C. D. has no horse. Can it be doubted that this is a warranty of soundness, for the breach of which the purchaser may recover damages?

We think that it should have been submitted to the jury to find whether there was a warranty, and, if so, whether there had been a breach thereof. Finding a warranty and breach, the jury should have been directed to assess the damages resulting therefrom, and to deduct the same from the contract price of the coal, assessing the plaintiff's damages at the sum remaining after making such deduction, and the interest on such sum. Because such issue was not submitted to the jury, there must be a new trial.

At the last term, a motion was submitted on behalf of the respondent to strike out the printed abstract of the return of the clerk theretofore served, for alleged noncompliance with rules 8 and 22 of this court; and numerous alleged errors and defects in such abstract were pointed out. The decision of the motion was postponed until the cause should be argued. In *Lloyd v. Frank*, 30 Wis., 158, we held that we would not entertain a motion by the respondent to dismiss an appeal for noncompliance with those rules, but that in such cases the court will exercise its discretion, and make such order as may be proper, of its own motion. We think the same rule should be applied here. The motion will therefore be dismissed, but without costs.

It should be added that although some part of the return is quite imperfectly abstracted, yet we see no evidence of bad faith in the preparation of the abstract, and those portions of the record which we have found it necessary to examine for the purpose of determining the appeal, seem to be sufficiently set out in the printed case.

*By the Court.* — Judgment reversed, and a new trial awarded.

RYAN, C. J., took no part in the decision of this cause.