Olson vs. Mayer and another.

OLSON vs. MAYER and another.

*December 18, 1882 — January 9, 1883.*

SALE OF CHATTELS. *(1) Delivery on executory contract: waiver of defects. (2) Contract held executory. (3) Conditional acceptance not a modification of contract; and (4) purchase price becomes due thereupon. (5) Conditions of acceptance need not be expressly agreed to.*

| | |
|---|---|
| 56 | 551 |
| 85 | 213 |
| 56 | 551 |
| 86 | 289 |
| 56 | 551 |
| 105 | 128 |
| 56 | 551 |
| 112 | 1472 |
| 56 | 551 |
| 117 | 2627 |
| 117 | 1628 |

1. Upon the delivery of goods on an executory contract of sale, the purchaser, having full opportunity for examination, waives defects in the goods unless he refuses to accept them under the contract, or accepts only on condition. A mere objection that the goods are defective will not prevent a waiver if they are accepted as a compliance with the contract. *Locke v. Williamson,* 40 Wis., 377. *Bonnell v. Jacobs,* 36 Wis., 59; *Pearson v. Martin,* 88 id., 265; *Mer-*

Olson vs. Mayer and another.

*riam v. Field*, 39 id., 578; *Morehouse v. Comstock*, 42 id., 630, distinguished.

2. Plaintiff executed two instruments in substantially the following form: "Albion, Sept. 12, 1881. I have this day sold to J. M.'s Sons my lot of seed tobacco, consisting of seven acres, at twelve cents per pound, table assorted, and agree to deliver the same at E. properly assorted and in good merchantable condition. Paid on two crops, $300." Processes occupying several months were necessary to render the tobacco fit for delivery. *Held* that, until delivery, the title to the tobacco remained in the vendor, and the contracts were purely executory.

3. An acceptance of such tobacco when delivered, upon condition that the vendor or the vendees, at his expense, should reassort it and that only so much as was found merchantable should be paid for, was not a modification of the original contracts; and in an action for the purchase price, such conditional acceptance may be proven by the defendants for the purpose of showing the quantity for which they are chargeable.

4. Upon such delivery and conditional acceptance of the tobacco under the contracts, the purchase price became due, although the sum to be paid was liable to be affected by the reassorting; and an action for such price was not prematurely brought and will not abate, even though the reassorting was not done until after its commencement.

5. Instructions proceeding upon the theory that the vendor was entitled to recover the purchase price for all the tobacco delivered, unless the parties *expressly* agreed that the vendees should reassort the same, are *held* erroneous. If the vendor delivered the tobacco after conditions of acceptance were imposed by the vendees, he must be held to have delivered it subject to those conditions.

APPEAL from the Circuit Court for *Dane* County.

The plaintiff agreed to sell a crop of tobacco raised by him in 1881 to the defendants, who are partners and dealers in tobacco in the city of New York. The agreement is embraced in two written instruments, of which the following are copies:

"ALBION, September 12, 1881.

"I have this day sold to Joseph Mayer's Sons, city of New York, my lot of tobacco, consisting of about eight and a half acres Spanish, at twelve cents per pound. Paid on two

crops, $300. Table assorted, and agree to deliver the tobacco at Edgerton, properly assorted, and in good and merchantable condition.                                    C. E. OLSON."

"September 12, 1881.

"I have this day sold to Joseph Mayer's Sons, city of New York, my lot of seed tobacco, consisting of seven acres, at twelve cents per pound, table assorted, and agree to deliver the tobacco at Edgerton, properly assorted, and in good and merchantable condition.                          C. E. OLSON.

"Paid on two crops, $300."

In February, 1882, the plaintiff hauled his crop of tobacco to Edgerton, and it was weighed and received into the warehouse of the defendants' agent at that place, Mr. Bentley, by such agent, but was kept by itself in the warehouse. The weight of the whole was 23,451 pounds. This action was brought soon after such delivery, to recover the contract price for the tobacco, less the $300 theretofore paid.

The testimony of the plaintiff tended to show that all of the tobacco so delivered was of the quality and in the condition required by the contracts, and that the agent of the defendants not only received it into his warehouse, but accepted delivery thereof unconditionally. The testimony on the part of defendants tends to show that the tobacco so received into the warehouse by their agent was not of the quality or in the condition required by the contracts, and that the agent refused to accept it as a compliance therewith, but accepted it on certain conditions stated in the opinion. After the action was commenced the defendant reassorted the tobacco, at an alleged necessary cost of $377.13, and rejected 3,820 pounds thereof as not answering the requirements of the contracts. The case is further stated in the opinion. The jury found for the plaintiff, and assessed his damages at the amount claimed by him. A motion by defendants for a new trial was denied by the court, and from a judgment entered pursuant to the verdict the defendants appealed.

*Winans & Fethers*, for the appellants.

For the respondent there was a brief by *Vilas & Bryant*, and oral argument by *Mr. I. C. Sloan* and *Mr. E. P. Vilas*.

LYON, J. In *Locke v. Williamson*, 40 Wis., 377, it was held that if defective goods are delivered upon an executory contract of sale and purchase, if the defects in the goods are patent and obvious to the senses, and the purchaser has full opportunity for examination and knows of the defects, he must, either when he receives the goods or within what, under the circumstances, is a reasonable time thereafter, notify the seller that the goods are not accepted as fulfilling the warranty (or rather the conditions of the contract) in that behalf; otherwise the defects will be deemed waived.

When the contracts for the sale and purchase of the tobacco in question were made, the tobacco was not in a deliverable condition. The crop had to be cured, assorted, and put up for market before it could be delivered, and this process occupied several months. There is nothing in the contracts which evidences an intention by the parties that the property in the tobacco should pass to the defendants before actual delivery thereof to them. Under these circumstances the authorities seem to agree that the property in the tobacco remained in the plaintiff until delivery, and hence, until that time, the contracts were purely executory. Benj. on Sales, §§ 311, 311*a*, and notes. While the contracts remained executory, the rights and liabilities of the respective parties must be determined by an application of the rule of *Locke v. Williamson*.

The cases of *Bonnell v. Jacobs*, 36 Wis., 59; *Pearson v. Martin*, 38 Wis., 265; *Merriam v. Field*, 39 Wis., 578; and *Morehouse v. Comstock*, 42 Wis., 630, cited to show that no objection to condition and quality need be made in order to save a right of action, are all cases of executed contracts of sale, where there was no opportunity to discover defects while the contracts remained executory. In such cases the

rule is quite different. Stipulations in the contracts which were only conditions (and therefore subject to waiver) while the contracts remained executory, became warranties by the execution of the contracts without opportunity to examine the goods. The distinction between *receiving* and *accepting* goods pursuant to an executory contract of sale, is discussed in *Bacon v. Eccles*, 43 Wis., 227, and some of the authorities are there cited.

The testimony tends to show, perhaps shows, that the agents of the defendants had ample opportunity for examination when the plaintiff delivered the tobacco into their warehouse at Edgerton, and fully improved the opportunity. They examined numerous packages when it was being weighed into their warehouse, and detected in it all the alleged defects of which they now complain. A more elaborate or thorough examination, by an actual reassorting of it, only served to fix the exact quantity of the defective tobacco,— not to disclose additional defects undisclosed by the preliminary examination.

In *Locke v. Williamson* it is said that the purchaser waives defects if, with full opportunity for examination, he accepts the property without notice to the vendor that it is not satisfactory, and will not be accepted as fulfilling the conditions of the executory contract for the sale and purchase thereof. We do not understand that a mere objection that the goods were not such as were contracted for, will alone prevent a waiver, if he accepts them as a compliance with the contract. The jury in this case were so instructed. To save the waiver the purchaser must refuse to accept under the contract, and accept only upon some condition satisfactory to him. For example, the agents of defendants might have said to the plaintiff repeatedly, when the tobacco was being put in their warehouse: "This tobacco is not such as your contracts call for. It has all of the defects and infirmities to which tobacco is subject. It is not properly assorted and is not

merchantable;" yet had they accepted the tobacco without imposing conditions upon their acceptance of it, the defendants would doubtless be held to have waived the alleged defects, and liable to pay the contract price for the whole quantity so accepted. On the other hand, if, in addition to such objections to the quality and condition of the tobacco, the agents had said to the plaintiff, "We will not accept this tobacco as a compliance with your contract, but only upon condition that the tobacco be properly assorted either by you or by us at your expense, and that you shall be paid only for that which meets the requirements of the contract;" then, if the plaintiff delivered the tobacco, he delivered it subject to the conditions thus imposed. No good reason is perceived why a purchaser may not also, as a condition of accepting the goods, reserve his right of action to recover damages for the alleged defects therein. If the vendor deliver the goods subject to such a reservation, it would seem that he thereby converts the condition of the executory contract of sale into a warranty in the executed contract, which would not be so were the buyer to accept the goods unconditionally.

There is testimony in the record which tends to show that the agents of the defendants refused to accept the tobacco which the plaintiff took to their warehouse, under the contracts between the parties and as a compliance therewith, and only accepted the same on the express conditions that either the plaintiff, or the defendants at his expense, should reassort the tobacco at their warehouse, and that the plaintiff should only be paid for that which was found merchantable. Such conditions scarcely amount to a modification of the original contracts. None of the terms or requirements of those contracts are thereby changed or affected. The alleged conditions upon which delivery was accepted relate only to the processes by which the quantity of tobacco of the kind and description called for by the contracts should

be ascertained. On this subject the original contracts are silent. In the complaint and answer the original contracts are recognized and relied upon by the parties respectively as valid, existing contracts. No modification of them is suggested by either party. Yet under the pleadings the quantity of tobacco to be paid for by the defendants is in issue. Hence we think the defendants may, under the present pleadings, be allowed to prove the conditions on which they accepted the tobacco, for the purpose of showing the quantity for which they are chargeable under their contracts with the plaintiff.

It seems very clear to us that, on the defendants' theory of the case, the title of the tobacco passed to the defendants when they accepted delivery of it upon the conditions alleged, notwithstanding it was subject to be reassorted, and the quantity for which the defendants were to pay was liable to be reduced thereby. No time of payment being named in the contract, the price of the tobacco became due on delivery and acceptance, although the sum to be paid was liable to be affected by reassorting. The defendants have since reassorted it and rejected a portion of the lot as unmerchantable. Although this was done after the commencement of the action, we do not think the action should abate for that reason. The effect of the alleged conditions was to give the defendants the right, notwithstanding they accepted the tobacco, to have it reassorted, and to relieve them from the obligation to pay for any unmerchantable tobacco found in the lot. The plaintiff claimed that it was all merchantable. The defendants claimed it was not. Hence the conditions, if any, were imposed by the defendants. Under them the plaintiff had the option to go to the defendants' warehouse and reassort the tobacco, or let the defendants do so at his expense. By failing to reassort, he chose the latter course. The defendants then had the option to reassort, or take it at the original weight. When the

action was brought, the plaintiff could not know which of these alternatives the defendants would adopt. Under these circumstances we think he was not required to await the choice of the defendants, but might bring his action immediately after delivery and acceptance of the tobacco, leaving the defendants to exercise their option afterwards, as they did. If the conditions were imposed, and if the reassorting disclosed that there was unmerchantable tobacco included in the lot delivered, it reduces the damages accordingly. Had it not been reassorted, the original weight ascertained when the tobacco was delivered would control.

We conclude that the action was not prematurely brought, admitting the alleged conditions were imposed. The learned circuit judge was of a different opinion; but if he erred in that particular it was favorable to the defendants, and not available on this appeal as ground of reversal.

The instructions to the jury accord, in the main, with the views above expressed. But there seems to be an error repeated in three of them, given at the request of the plaintiff, which may have prejudiced the case of the defendants. It is only necessary to set out one of these instructions. It is as follows: "It was the duty of the defendants either to accept the tobacco under the contract and pay the contract price for it, or to totally reject it, and unless the jury find that the plaintiff consented to a conditional delivery and that defendants might assort ¦it, he is entitled to recover for the whole amount delivered at the contract price." The implication in the above and other instructions given the jury is that unless the parties agreed that the defendants should assort the tobacco, the plaintiff was entitled to recover for the whole amount delivered into the warehouse at the contract price. The jury might well have understood by the instructions that unless they found the parties made an absolute agreement that the defendants should assort the tobacco, the plaintiff should recover his full claim. There is no testimony

to the effect that any such affirmative agreement was made. We have already said the evidence tends to prove that the defendants refused to accept the tobacco except upon the conditions that the plaintiff reassort it, or that they might do so at his expense, and that they accepted it on such conditions alone. If the plaintiff delivered it after these conditions were imposed by the defendants, he must be held to have delivered it subject to the conditions, and they are available to the defendants in this action.

No instruction was given which fully or substantially covered that aspect of the case. The whole theory of the instructions is that the plaintiff was entitled to recover the full amount of his claim, unless the parties expressly agreed that the defendants should reassort the tobacco. In view of the testimony we think this was error. The instructions should have been that the plaintiff was entitled to recover the contract price per pound for all of the tobacco delivered, unless the defendants' agent refused to accept the same as a compliance with the contracts, and only accepted it upon the conditions that the plaintiff would reassort it or permit the defendants to do so, and so much of the quantity delivered as did not answer the requirements of the contracts should be rejected; and that, if those conditions of acceptance existed, the measure of the plaintiff's damages was the contract price for so much of the tobacco as fulfilled the requirements of the contract in respect to quality and condition. Of course, the defendants should be allowed the $300 advanced upon the contracts when they were made. Upon proper pleadings the defendants should also be allowed the necessary expense of assorting, if the agreement was that the plaintiff should pay such expense. The answer contains a counterclaim for damages for an entire failure by the plaintiff to perform his contracts, but we think it is not sufficiently broad to include the expense of such assorting. The circuit

court will, undoubtedly, allow an amendment of the pleading in that particular if defendants desire to amend.

Upon the whole case we think there should be another trial.

*By the Court.*— Judgment reversed, and cause remanded with directions to award a new trial.