[No. 160.    Decided August 1, 1891.]

THE TACOMA COAL COMPANY v. E. H. BRADLEY AND M. A. BRADLEY.

BREACH OF WARRANTY — DAMAGES — BURDEN OF PROOF — EVIDENCE — RELEVANCY.

Where there was a warranty of the quality of brick ordered for the construction of coke ovens, and in an action for the purchase price of the brick the defendant sets up a breach of such warranty as a counter-claim, it is error to instruct the jury "that if the defendant, before using the same, had an opportunity to inspect said goods and did not do so, and if, upon such inspection, could have ascertained the defects claimed, then said defendant is not entitled to any damages."

A vendee may retain goods after knowledge of their defects, without giving notice to the vendor thereof, and, in an action by the vendor for the purchase price, plead breach of warranty for the purpose of recouping damages.

Where, in an action to recover the price of brick, the defendant alleges a warranty or its equivalent, and a breach thereof, the burden is on defendant to prove both the warranty and the breach.

Where defendant relies upon the falling in of the coke ovens as proof of the poor quality of the brick, it is not erroneous to instruct that "if the falling in of said ovens was caused by a misconstruction of the same, or any defects in said construction or material used therein, other than the goods involved in this controversy, or the misuse of said oven subsequent to said construction, the defendant is not entitled to any damages."

Where a letter is part of the correspondence between parties concerning the subject of fire brick, specifying the price thereof and containing statements as to the quality of the brick which plaintiff proposed to sell defendant, the mere fact that other brick

had been shipped to defendant just previous to the order for those in controversy does not render the letter irrelevant or immaterial, although it does not specifically refer to the brick in controversy.

*Appeal from Superior Court, Pierce County.*

The facts are fully stated in the opinion.

*Sheeks & Goodwin,* for appellant.

*Snell & Bedford,* for appellees.

The opinion of the court was delivered by

ANDERS, C. J. — This action was brought by the respondents to recover from the appellant the sum of $524.91, and interest, for certain fire brick alleged to have been sold and delivered by the former to the latter between June 23 and August 6, 1888, at the agreed price of $15 per thousand. The defendant admitted in its answer to the complaint the delivery of the brick as alleged by plaintiffs, but denied that the same were worth the sum of $524.91, or any greater sum than $120; denied that $15 per thousand was a fair and reasonable price therefor, or that it agreed to pay that price; but admitted that it had not paid for the brick. As a counter-claim against the plaintiffs' demand, the defendant alleged that, at the time it ordered the brick, it specifically informed the plaintiffs that they were to be used in the construction of coke ovens, and that it only agreed to purchase of plaintiffs such brick as were suitable for that purpose; that the brick shipped by plaintiffs to defendant, except about 8,000 thereof, were utterly worthless, as the plaintiffs well knew, for building such ovens; that the defendant received said brick, relying upon the good faith and representations of plaintiffs, and were unable to discover the worthlessness of said brick until the same had been used in the construction of coke ovens, which defendant constructed properly and of good material, with due skill and care; that all of said ovens constructed

of the brick furnished by plaintiffs to defendant, except
the 8,000 admitted to be of good quality, did, immediately
upon use, and owing solely to the negligence of the plaint-
iffs in the manufacture of said brick, fuse, melt and fall in,
and were utterly worthless; that, as soon as the defend-
ant discovered said worthlessness of said brick, it notified
plaintiffs thereof; that, by reason of the negligence of the
plaintiffs in furnishing defendant with brick unsuitable for
the construction of coke ovens, the defendant was damaged
on account of freight paid for carriage of said brick $2,000,
for labor in construction of said coke ovens $250, and on
account of defendant's loss of manufacture and sale of coke,
in the sum of $1,500; that it was damaged in all, after de-
ducting $120 for good brick, in the sum of $4,630, for
which sum it prayed judgment against plaintiffs. Plaint-
iffs denied each and every allegation of defendant's counter-
claim, and upon the issues thus joined a trial by jury was
had, resulting in a verdict for plaintiffs for the sum claimed
in the complaint.

It appears from the record that the respondents were
engaged in the manufacture and sale of fire brick at Lay-
ton Station in the State of Pennsylvania, and that appel-
lant, a corporation, was engaged in the manufacture of coke
at Wilkeson, in the territory (now state) of Washington.
It also appears that the witness J. M. Kelly was employed
by appellant to superintend the construction of its coke
ovens; that he knew the character of brick made by re-
spondents, having formerly resided in Pennsylvania; that
he was personally acquainted with respondent E. H. Brad-
ley; and that he ordered, or caused to be ordered, by
letter, the brick in controversy. It further appears that,
previous to ordering the brick in question, appellant had
ordered and received twenty-eight or thirty thousand brick
from respondents for the same purpose for which the latter
were required, and that they had been used in building or

repairing coke ovens. It was not contended on the trial that respondents did not know the use to be made of the brick by appellant. Respondent E. H. Bradley, testifying in his own behalf, admitted that he knew the brick were to be used in constructing coke ovens; and on May 17, 1888, Superintendent J. M. Kelly wrote a letter to Bradley concerning these brick, in which he stated:

"I sent an order to Tacoma to-day for 26,000 more crown bricks, and jams and arches for nine more ovens, and 1,500 bottom tile. I suppose they will order from you. I want you to be very careful about the quality. Do not send anything but what is A No. 1, and send as quick as possible."

And again on May 24, 1888, he wrote:

"I sent an order to general office yesterday. I named 26,000 crown brick. When the order reaches you, you will see what I want. Make the order 28,000 crown brick. Send me the best. This is a trade you will want to hold, and you can only do it by sending nothing but the best."

On the trial the claim for damages on account of loss of sale of coke was abandoned, and no very satisfactory testimony appears respecting other items of damage claimed, although some testimony was adduced tending to show the amount paid for freight and for constructing ovens claimed to have been worthless.

There can be no doubt that the contract between the parties amounted to a warranty on the part of the respondents of the quality of the brick ordered by appellant, and the respondents seemed to have recognized this fact on the trial, and very properly produced testimony tending to show that they had discharged their obligation to appellant by sending the character of brick required by the latter. But counsel for respondents insist that, if the brick were defective in quality, and not such as were ordered, the defect was patent; and that appellant having inspected them, and having failed to return or offer to return them,

can claim no damage on account of such defect. The court below seems to have adopted the view of counsel, and instructed the jury as follows:

"10. You are further instructed that in case you find a warranty of quality by these plaintiffs of the goods in question, and a breach thereof, then, in all events, the plaintiffs would only be responsible for such damage as the difference in the price of said goods as represented and the value of the goods as they really were, together with such other damages as were the direct and immediate consequence of the said breach; but that if the defendant, before using the same, had an opportunity to inspect said goods, and did not do so, and if upon such inspection could have ascertained the defects claimed, then said defendant is not entitled to any damages.

"11. You are further instructed that if the defendant retained and used said goods after a knowledge of their defects, without notifying plaintiffs of such within a reasonable time, it waives its right to recoup for damages."

Appellant claims that these instructions do not state the law correctly, and should not have been given to the jury. We think these instructions were erroneous, and that appellant's position must be sustained. · Authorities are cited in the brief of counsel from New York and Wisconsin to sustain the correctness of these instructions. But the New York authorities simply hold that in cases of executory contracts for the sale and delivery of personal property in the absence of a warranty and a breach, the vendee's right to recover damages does not survive the acceptance of the property, after an opportunity to discover defects, unless notice has been given to the vendor, or the vendee returns or offers to return the property. The rule is there held inapplicable in cases of express warranty of quality. These decisions do not, therefore, support respondent's contention to the extent claimed. See *Canning Co. v. Metzger,* 118 N. Y. 260 (16 Am. St. Rep. 753; 23 N. E. Rep. 372); *Manufacturing Co. v. Allen,* 53 N. Y. 519. The

Wisconsin cases, cited by counsel, declare the doctrine in that state to be that if chattels sold under a warranty, express or implied, are defective or unfit for the use intended, and the defects were not open and palpable, and were unknown to the purchaser when he received the goods, he may, if sued for the price, without returning or offering to return the goods, and without notifying the vendor, recoup such damages as he may have sustained on account of such defects. See *Olson v. Mayer,* 56 Wis. 551 (14 N. W. Rep. 640); *Barb Wire Co. v. Phillips,* 67 Wis. 129 (30 N. W. Rep. 295). In the case at bar the evidence is conflicting, and does not satisfactorily show that there was any patent and obvious defect in the brick in question. One of the plaintiffs, while claiming that the brick were of the quality ordered, testified that "a man who understands fire brick can, nine times out of ten, tell whether or not brick are good by looking at them." On the contrary, Kelly, who was a man experienced in building coke ovens, testified, substantially, that he knew of no method of ascertaining whether the brick were fit for such a purpose other than actual use. But, be that as it may, we are of the opinion that the appellant had a right to assume that the brick were of the quality ordered, and to act accordingly, and that appellant violated no duty it owed to respondents in failing to search for imperfections before using them.

It is undoubtedly true that if the brick were defective, and appellant was silent, and did not give notice or offer to return them within a reasonable time after discovering defects, the right to rescind the sale was thereby waived. But the right to recover damages on account of defective quality was in no wise affected. Benjamin on Sales (Bennett's notes, 1888), § 901. It is also true that in such cases a failure to give notice or to offer to return the goods would have an important bearing upon the question of

warranty, and would raise a strong presumption that the goods received were of satisfactory quality. *Babcock v. Trice,* 18 Ill. 420 (68 Am. Dec. 560); Abbott, Trial Evidence, p. 348. That the vendee may retain the goods without notice, and plead breach of warranty, in an action by the vendor for the purchase price, is shown by numerous authorities. *Dayton v. Hooglund,* 39 Ohio St. 671; *Polhemus v. Heiman,* 45 Cal. 573; *Holloway v. Jacoby,* 120 Pa. St. 583 (15 Atl. Rep. 487); Benj. Sales, § 903; *Id.,* p. 867, and cases cited; *Babcock v. Trice, supra; Bagley v. Rolling Mill Co.,* 22 Blatchf. 342 (21 Fed. Rep. 159).

The following instructions to the jury are objected to by the appellant:

"8. Fraud is never presumed, but must be affirmatively proven by the party alleging the same. The law presumes that all men are fair and honest, that their dealings are in good faith, and without intention to disturb, cheat, hinder, delay or defraud others. Where a transaction, called in question, is equally capable of two constructions, one that is fair and honest, and one that is dishonest, then the law is that the fair and honest construction should prevail, and the transaction called in question should be presumed fair and honest.

"9. You are instructed that, in so far as the defendant relies upon a warranty of quality of the property sold and a breach of the same, the burden of proving the warranty is upon the defendant, and, unless it has proved both the warranty and the breach alleged by a preponderance of evidence, it will not be entitled to any benefit therefrom in the suit.

"12. If you believe from the evidence that the falling in of said ovens was caused by a misconstruction of the same, or any defects in said construction or material used therein other than the goods involved in this controversy, or the misuse of said oven subsequent to said construction, the defendant is not entitled to any damage herein.

"13. You are instructed that in no event is plaintiff liable for any damages for expected profits to be obtained from the sale of merchandise produced by said ovens, in

which goods in controversy were to be used, unless the contract for the same were specially and specifically made known to plaintiff at the time of the purchasing of said goods, and that he understood that they were for that purpose.

"14. You are further instructed that the law is that a known, defined and described article is ordered of a manufacturer, although it is stated to be required by the purchaser for a particular purpose, still, if the known, defined and described thing be actually shipped, there is no warranty that it shall answer the particular purpose intended by the buyer.

"15. You are further instructed that if you believe from all the evidence that the defendant, after a discovery of the alleged defects, agreed to pay for said goods, and said nothing about damages to the plaintiff, and made no demand therefor, then it will be taken to have waived all right to such damages."

The ninth instruction is unobjectionable. The defendant having alleged a warranty or its equivalent and a breach thereof, it was incumbent upon it to prove both in order to be entitled to any benefit therefrom. It is contended that there was no evidence to justify either the eighth, thirteenth, fourteenth or fifteenth instructions, and that each of them was calculated to mislead and confuse the jury. As to the eighth, thirteenth and fifteenth instructions, the point is well taken. The twelfth instruction was properly given. The fact that the ovens fell down was relied on by the appellant as positive proof of the unfitness of the brick. If the falling was caused by unskillful construction or defective material other than that involved in this controversy, or subsequent misuse of the ovens, then there was practically no proof of poor quality, and there could therefore be no damage.

Appellant also claims that it was error for the court to refuse to admit its exhibit 1 in evidence. That was a letter written by E. H. Bradley to Superintendent Kelly, concerning prices and quality of brick sold by him, and

concerning freight rates to Tacoma.  It did not specifically refer to the brick in controversy, but it was a part of the correspondence between the parties concerning the subject of fire brick, and was the only communication shown specifying the price of the brick.  It contained statements as to the quality of the brick which the respondents proposed to sell to appellant, and the mere fact that other brick had been shipped to appellant just previous to the order for those in controversy did not, in our opinion, render the letter irrelevant or immaterial.  It should have gone to the jury for what it was worth.

The judgment of the court below is reversed, and the cause remanded for a new trial.

STILES, HOYT, SCOTT, and DUNBAR, JJ., concur.