(March 16, 1912.)

# W. M. GRISINGER, Doing Business as the ORCHARDIST SUPPLY COMPANY, Respondent, v. D. R. HUBBARD, Appellant.

[122 Pac. 853.]

APPEAL—SETTLEMENT OF REPORTER'S TRANSCRIPT—RIGHT TO OPEN AND CLOSE—SALE OF FRUIT TREES—WARRANTY—DAMAGES FOR BREACH OF WARRANTY—JURY'S DUTY TO FOLLOW INSTRUCTIONS.

(Syllabus by the court.)

1. Under the provisions of Rev. Codes, sec. 4434, as amended by chap. 119, Laws of 1911, p. 379, a party appealing and desiring to procure a review on appeal to the supreme court of any ruling of the district court, made during the trial, or the sufficiency of the evidence to sustain the verdict or decision in an action or special proceeding as the same appears in the transcript of the testimony and proceedings, including the instructions given or refused and exceptions thereto on the trial or such part thereof as may be necessary, in lieu of preparing, serving and procuring the settlement of a bill of exceptions should procure a transcript of the stenographer's notes and have the same settled and allowed by the trial judge, in accordance with the provisions of subd. 3 of said section.

2. The burden of proof, with its incident right to open and close, naturally and necessarily is in the first instance with the plaintiff or party who initiates the action, suit or proceeding, and remains with such party so long as it continues incumbent upon him to make any proof whatever. When the defendant, either by an admission in express and absolute terms or by refraining from denial of the plaintiff's cause of action and alleging affirmative matter in avoidance of it, renders it wholly unnecessary for the plaintiff to give any evidence whatever to have a complete recovery of all that he claims, the burden and right are with the defendant.

3. The instructions contained in the record in this case examined, and *held* to be a correct statement of the law as applicable to the facts of this case.

4. An implied warranty arises out of a state of facts which show the intention of the parties to be that the article ordered is of the kind and quality ordered and fit and suitable for the purpose for which it is ordered.

5. Where a nurseryman grows fruit trees for the purpose of selling to persons desiring to cultivate a commercial fruit orchard with a view of raising fruit for commercial purposes, he is presumed to have produced such young fruit trees for the purpose of developing into commercial trees; that is, trees that will produce fruit suitable for commercial purposes; and in selling such trees for that purpose the nurseryman intends that they shall be suitable and adapted to the purpose for which they are sold, and be of the kind and quality which will produce the purpose for which they were originally planted, and in such a physical condition that they will grow after being transplanted, if ordinary care and attention is given them in their planting and cultivation.

6. Where a person desiring to plant a commercial apple orchard orders fruit trees from a nurseryman and gives direction as to the kind and number, and the nurseryman fills the order and ships the trees to the place of delivery, the fact that the purchaser accepts the trees upon their delivery does not waive the warranty, but the warranty survives the acceptance; and where the trees upon their arrival at the place of delivery are found to be in bad condition, unfit for planting and not likely to grow, in whole or in part, the purchaser may reject them, or receive them and rely upon the warranty.

7. Where fruit trees are received under an implied warranty as to their condition and likelihood to grow, and the purchaser cannot definitely determine whether they are in such condition at the time of delivery, the purchaser has the right to receive them and ascertain whether they are in a good or bad condition or will grow if given proper care, and by so receiving such trees the purchaser is not precluded from recovering upon such warranty.

8. Where the verdict of the jury is not supported by the evidence and is contrary to the law applicable to the facts alleged and proven and covered by the instructions given, the verdict will be reversed.

APPEAL from the District Court of the Third Judicial District for Ada County. Hon. Carl. A. Davis, Judge.

An action to recover for the purchase price of fruit trees. Judgment for plaintiff. *Reversed.*

George H. Rust, for Appellant.

A verdict against the instructions of the court should be set aside. (Estee's Pleading (4th ed., Boone), sec. 4919, note 427; *Farley v. Budd,* 14 Iowa, 289.)

The jury cannot disregard the instructions of the court even though erroneous. (*Emerson v. Santa Clara County*, 40 Cal. 543; *Aguirre v. Alexander*, 58 Cal. 30; *Loveland v. Gardner*, 79 Cal. 321, 21 Pac. 766, 4 L. R. A. 395; *Murray v. Heinze*, 17 Mont. 353, 42 Pac. 1057, 43 Pac. 714.)

Where the jury acted under a mistaken impression as to the legal effect of evidence, or in a total disregard of it, a new trial will be granted. (Estee's Pleading (Boone, 4th ed.), sec. 4916, note 396; *Minturn v. Burr*, 20 Cal. 48; *Fulkerson v. Bollinger*, 9 Mo. 838; *Moran v. Bogert*, 16 Abb. Pr., N. S. (N. Y.), 303.)

For decisions of this court, where a new trial has been ordered for insufficiency of the evidence to justify the verdict, see *Harkness v. Smith*, 3 Ida. 221, 28 Pac. 423; *Farmers' Co-op. Ditch Co. v. Riverside Irr. Dist.*, 16 Ida. 525, 102 Pac. 481; *McGuire v. Grangeville Sav. & Tr. Co.*, 19 Ida. 635, 115 Pac. 18; *Say v. Hodgin*, 20 Ida. 64, 116 Pac. 410.

Acceptance of the goods does not waive the warranty, and the warranty survives the acceptance thereof. (35 Cyc. 423, 429, 430; *Muller v. Eno*, 14 N. Y. 597; *Getty v. Rountree*, 2 Pinn. (Wis.) 379, 54 Am. Dec. 138; *Northwestern Cordage Co. v. Rice*, 5 N. D. 432, 57 Am. St. 563, 67 N. W. 298.)

Karl Paine, for Respondent.

The verdict is not contrary to the instructions, and the trial court was right in denying appellant a new trial on this ground. (1 Spelling, New Trial and App. Practice, pp. 432, 433.)

In a sale of goods, although for a fair price, there is no implied warranty of quality or soundness, the law presuming that a buyer who fails to exact an express warranty relies on his own judgment. The rule of *caveat emptor* is therefore applied, especially where there has been an inspection or an opportunity to inspect, or the buyer's knowledge or opportunity for knowledge of the defects equals that of the seller. (35 Cyc. 397.)

"On a sale of seeds there is an implied warranty that the seeds are fit to sow and will germinate. . . . . But if a par-

ticular kind of seed is purchased by name, the warranty implied is only that the seed is of the kind designated, and there is no warranty that the seed will germinate or is fit for the intended purpose." (35 Cyc. 409; *Gardner v. Winter*, 117 Ky. 382, 78 S. W. 143, 25 Ky. L. Rep. 1472, 63 L. R. A. 647.)

STEWART, C. J.—This action was brought by the respondent to recover from the appellant the sum of $136, alleged to be due as the purchase price of certain fruit trees alleged to have been sold and delivered by respondent to appellant. Answer was filed and the cause was tried to a jury and a verdict rendered in favor of the respondent for the sum of $156, and judgment was rendered thereon for said sum. A motion for a new trial was made and overruled, and this appeal is from the judgment and the order overruling the motion for a new trial.

A motion was made in this court to dismiss the appeal from the judgment because it was not perfected within sixty days after the entry of said judgment. This motion was confessed by counsel for appellant and the appeal from the judgment is therefore dismissed. A motion was also made to strike the reporter's transcript from the record, for the reason that the same was not settled by the court. It was admitted upon oral argument that there was no certificate of the trial court attached to the reporter's transcript settling such transcript, and application was made to this court upon such hearing for permission to file a certificate of the district judge in which the trial judge certified that he had examined the reporter's transcript of the evidence as certified by George F. Nicklaus, official court reporter, and by the clerk of the district court, and that said reporter's transcript contains all of the evidence considered by the trial court upon the hearing of the motion for a new trial, and that the judge settled and allowed the same as a true and complete copy of said evidence, and that upon the hearing of said motion for a new trial he considered each, every and all of the papers and files mentioned in the clerk's certificate to the transcript and contained in the clerk's transcript, and that the reporter's transcript and the said

clerk's transcript contained copies of all the evidence and all the papers and files in the action considered on the hearing of the motion for a new trial.

Rev. Codes, sec. 4434, as amended by chap. 119, Laws of 1911, p. 379, provides: "Any party desiring to procure a review on appeal to the supreme court of any ruling of the district court made during the trial, or the sufficiency of evidence to sustain the verdict or decision, in an action or special proceeding, may, in lieu of preparing, serving, and procuring the settlement of a bill of exceptions as in this chapter provided, procure a transcript of the testimony and proceedings. including the instructions given or refused, and exceptions thereto, on the trial, or such part thereof as may be necessary, in the following manner." Then follow provisions for procuring the reporter's transcript, and subd. 3 of such section provides: "At the expiration of the time limited for designating errors, the transcript, with any notice designating errors shall be transmitted to the judge who tried the cause, by the clerk, on application of either party, and such judge shall forthwith settle the same, notifying the parties by such notice as he deems adequate of the time and place of settlement in the event of any error designated by notice and not agreed to, and when so settled, said transcript shall have the force and effect of a bill of exceptions duly settled and allowed, and shall be deemed adequate to present for review any ruling appearing therein to have been excepted to, or by statute deemed excepted to, or any question of insufficiency of evidence which may afterward be properly presented by specification of insufficiency in the brief on appeal, and the original transcript and copies thereof lodged with the clerk shall be by him marked and filed and retained by him for transmission to the clerk of the supreme court in the event an appeal is afterward perfected."

Argument was made by counsel for appellant upon the hearing of this motion to the effect that in case errors were not designated by either party, as to the correctness of the reporter's transcript, then in such case there was nothing to be settled, and no settlement was required to be made by the

judge, as the failure to designate errors presumes that the transcript of the reporter was correct, and would not require a settlement by the judge. We cannot agree to this contention, for the reason that not only counsel of the respective parties may designate errors, but the settlement of a transcript is left entirely with the judge, and it is within his power also to make alterations and corrections of the transcript to correspond to the truth, and the statute has left it to the judge alone to settle the transcript, and the mere failure to designate errors does not limit the power of the judge or excuse the necessary statutory requirement of a settlement of such transcript. This section requires that in order to review the matters contained in such transcript on appeal in the supreme court, the same must be settled by the judge, and when so settled has the force and effect of a bill of exceptions duly settled and allowed, and shall be deemed adequate to present for review any ruling appearing therein to have been excepted to, etc.; that is, this section clearly requires that the trial judge shall settle the reporter's transcript, and that such settlement is a requisite to give to the transcript the effect of a bill of exceptions. While the certificate presented upon the hearing of said motion, made by the trial judge, was not strictly made in accordance with the statute by reason of not having been made prior to the appeal, yet in view of the fact that the practice has not been thoroughly established under this section, we have permitted it to be filed and to take the place of the settlement required by the statute. The motion to strike is overruled.

Before taking up the questions urged upon this appeal, we deem it proper to call attention to the course pursued upon the trial. After the jury were selected, counsel for respondent called the court's attention to what he contended to be the issues made by the pleadings, inasmuch as the defense had plead a warranty, and claimed that the burden was upon the defense to prove such warranty, and because of such burden it was incumbent upon the defendant to open and close the case. Some argument upon this question was indulged in between counsel and the court, and it was finally concluded

that the defendant was required to open the case and prove the matters set up in his cross-complaint, and after which the plaintiff should prove his case. This procedure was entirely erroneous. The action was brought by the plaintiff for the purchase price of apple trees alleged to have been sold and delivered by respondent to the appellant. The defendant in his answer specifically denied the allegations of the complaint, and alleged in his cross-complaint that the defendant ordered from one C. P. Hartley 1,100 apple trees, and that Hartley stated that he did not have the trees of his own growing, but could get them for the defendant; that the order was given on condition that the trees should be in good condition for growing, true to variety, and in all ways such trees as could be depended upon to grow if properly planted and cared for; that the plaintiff, in response to instructions from Hartley, shipped about 1,100 trees to the defendant at Meridian, and that the trees were received in bad condition, and that the boxes were broken and the trees dried out and brittle; that the plaintiff represented the trees to be in good condition for growing, and that they would grow if properly planted and cared for; that the plaintiff guaranteed and warranted that the trees were in good condition for growing and that they would grow if properly cared for; that the defendant relied upon the representations and warranties of the plaintiff and received the trees, not knowing that they were in such condition that they would not grow, and planted the trees in a proper manner and cared for them carefully and properly; that practically all the said trees failed to grow and proved to be entirely worthless and without value; that before planting such trees defendant plowed the land for such planting, and that he cultivated the ground properly and cared for the trees carefully until convinced that the trees were dead and would not grow; that the plaintiff was notified of such fact; and that the defendant expended the sum of $250 in preparing the ground and planting the trees; that he was damaged because of the failure of such trees to grow in the sum of $250; that there was a breach of warranty in the fact that the trees ordered were not at the time they were delivered in

good condition or in such a condition that they could be properly planted and made to grow when given proper care and attention.

Under these issues there were certain allegations of the complaint which were specifically denied, and without some proof the plaintiff could not have recovered in the action. If no proof had been offered by the plaintiff he would not have been entitled to a judgment, and it was necessary for the plaintiff to prove his case, and after such proof had been made, then the burden was upon the defendant to sustain his cross-complaint, and to prove the warranty as alleged, but such did not require that the defendant should open the case and first make proof of such warranty, and it was clearly unwarranted on the part of the court to require the defendant to open and close in making proof. We call attention to such procedure because of the fact that a new trial has been determined upon by this court, and in order that the same error may not occur upon a retrial of the case. (Rev. Codes, sec. 4383.)

A very interesting discussion of this question will be found in notes and citations of P. H. Van Auken to the case of *Brunswick & Western R. R. Co. v. Wiggins,* 61 L. R. A. 513. The annotator, after reviewing many cases, some following the common law, some statutory provisions, deduces the following: "That the burden of proof, with its incident right to open and close, naturally and necessarily is, in the first instance, with the plaintiff or party who initiates the action, suit or proceeding, and remains with such party so long as it continues incumbent upon him to make any proof whatever. That, when the defendant, either by an admission in express and absolute terms, or by refraining from denial of plaintiff's cause of action and alleging affirmative matter in avoidance of it, renders it wholly unnecessary for the plaintiff to give any evidence whatever to have a complete recovery of all that he claims,—the burden and right are with the defendant."

Two questions are presented and urged as grounds for a reversal of the judgment in this case: First, the insufficiency of the evidence to justify the verdict; second, that the verdict is against the law. We will first consider the question of the

insufficiency of the evidence to justify the verdict. It appears from the evidence that the appellant was desirous of purchasing about 1,100 apple trees for the purpose of planting with the object of raising fruit. One L. M. Campbell, who was staying in the office of the appellant, represented as salesman Charles P. Hartley of Emmett, Idaho, a nurseryman and a grower of fruit trees. The appellant told Campbell that he desired to order 1,100 apple trees from Hartley through Campbell. Campbell sent the order for such trees to Hartley; Hartley was unable to fill such order, and sent the order for such trees to the respondent, and directed him to ship the trees directly to the appellant at Meridian, Idaho. The order was filled by the respondent, and on the 31st day of March, 1909, the respondent shipped to D. R. Hubbard at Meridian, Idaho, 300 Rome Beauties, 400 Winesap and 400 Jonathan apple trees, and transmitted to appellant a bill and an account for said trees as follows:

"300 Rome Beauty, 4 to 6 ft., 15¢ . . . . . . . . . . . . $45.00
400 Winesap, 3 to 4 ft., 12½¢ . . . . . . . . . . . . . . 50.00
400 Jonathan, 3 to 4 ft., 12½¢ . . . . . . . . . . . . 50.00
                                                        _____
                                                        $145.00

Less freight charges."

These trees were received by the appellant through Charles E. Cox, appellant's tenant and employee, who was acting under the direction of the appellant, at Meridian, Idaho, the exact date not being stated but about the 20th day of April, 1909, and he paid the freight charges—about nine dollars, on such trees. Cox says that when the trees were received they were in bad condition; that the box in which the trees were packed was not lined, and had open cracks in it, and that the straw in which the trees were packed was perfectly dry; that the tops of the trees were dead, brittle, and would break off; that the roots of the trees and part of the body seemed to be alive, but that he had doubts about the trees growing. He, however, took the trees to the farm of the appellant and dug a trench and put them in and poured water

on the roots and covered them over with dirt, and immediately commenced planting them upon the farm. About one-half of the trees were planted upon the farm of the appellant; the other half was taken to another farm where they were also planted, and the testimony shows that the trees were well cared for after they were received, and the ground thoroughly prepared and the trees properly planted in the manner adopted by horticulturists, and the usual and ordinary care required in planting a fruit orchard was given to the trees after planting. It is further shown that about half of the trees lived and grew, while the other half died. The evidence further shows that nearly all of the Rome Beauty apple trees were in an extremely poor condition at the time they were received, and nearly all failed to grow, and that at the time the trees were received it could not be ascertained from their condition whether the trees, under proper treatment and care, would grow or not, and for that reason they were planted. The evidence also shows that the fruit trees at the time of packing and delivery to the railroad company for transportation were in a healthy condition, and were taken from the ground and packed as trees are usually packed for shipping, and that there was nothing in the condition of the trees at the time they were shipped which would in any way interfere with the growth of such trees if they were properly set out and cared for. There is no conflict in the evidence as to the foregoing facts.

Upon the question as to whether the trees shipped were properly packed there is a conflict in the evidence, the evidence for the respondent showing proper packing at time of shipment, and the evidence on the part of appellant showing that they were not properly packed when received. Upon all other questions shown by the evidence there is practically no conflict in the testimony. Under this statement of the facts the question is argued, upon behalf of appellant, that there was an implied warranty that the trees were of the kind ordered and in a condition which would insure the growth of such trees if properly planted and cared for after planting; while on the part of the respondent it is argued

that there was no warranty, either express or implied, and that the appellant having received the trees and planted the same thereby accepted them in the condition in which they were received without relying upon any warranty whatever, and that there was no implied warranty arising out of the transaction.

The trial court seems to have taken the view contended for by appellant, as indicated by the instructions given to the jury upon this question. The court instructed the jury as follows:

"Where certain kinds of apple trees are supplied to a purchaser by a nurseryman, there is an implied warranty that such trees are alive, and in reasonably good condition for planting when delivered to the buyer, in the absence of any specific contract concerning the quality or condition thereof, and in this case if you believe from the evidence that the defendant ordered fruit trees from the plaintiff for the purpose of planting them, and that the plaintiff was made aware of such purpose, either by the order given for the fruit trees or otherwise at that time, and that the defendant had no opportunity to inspect the trees at the time of giving the order, and if you further find from the evidence that the trees shipped to the defendant by the plaintiff were not fit for the purpose of planting and that a reasonable proportion of them did not grow when planted and properly cared for, then the court instructs you that the defendant should recover from the plaintiff his damages caused by the failure of such warranty."

Also: "Where personal property ordered by a purchaser is only fit for one purpose and cannot be intended for any other purpose except the one for which they are ordered, as in the case of nursery stock, the seller will be presumed to have sold them for that purpose and warranted them to be fit therefor."

And: "Where personal property sold under a warranty, express or implied, is received by the purchaser, the purchaser has a right to recover under the warranty, even though

he did not return or offer to return the goods, or give notice of their defects."

Also: "Where fruit trees are sold under a warranty, express or implied, that they are sound and reasonably fit for planting purposes, the measure of damages is the difference, in value between the orchard actually grown from the trees received, at the next planting time after the discovery of the breach, and the value which such orchard would have had if the trees had been as warranted, at the same time deducting the cost of taking care of such trees; and in this case, if you find from the evidence that the fruit trees received by the defendant were sold under a warranty that they were sound and reasonably fit for planting, and that the warranty was not complied with by the plaintiff, then the defendant is entitled to recover under his counterclaim such difference in value as it shall be determined by you under the evidence."

These several instructions, in our judgment, clearly and specifically stated the law to the jury governing the particular facts as shown by the evidence. (*Shearer v. Park Nursery Co.*, 103 Cal. 415, 42 Am. St. 125, 37 Pac. 412; *Shaw v. Smith*, 45 Kan. 334, 25 Pac. 886, 11 L. R. A. 681; *Long v. Pruyn*, 128 Mich. 57, 92 Am. St. 443, 87 N. W. 88; *Heilman v. Pruyn*, 122 Mich. 301, 80 Am. St. 570, 81 N. W. 97; *Getty v. Roundtree*, 2 Pinn. (Wis.) 379, 54 Am. Dec. 138; *Johnson v. Sproull*, 50 Mo. App. 121.)

Under the facts of this case we think it is clear that there was an implied warranty that the fruit trees were of a quality and condition that would grow and develop to fruit-bearing, if properly planted and cultivated and cared for after such planting. An implied warranty arises out of a state of facts which show the intention of the parties to be that the article ordered is of the kind and quality ordered and fit and suitable for the purpose for which it is ordered. There can be no question, we think, but that a nurseryman growing young fruit trees for the purpose of sale to persons desiring to cultivate a commercial fruit orchard with a view of raising fruit for commercial purposes, is presumed to have produced such young fruit trees for the purpose of develop-

ing into commercial trees; that is, trees that will produce fruit suitable for commercial purposes, and that in selling such trees for that purpose the nurseryman intends that they shall be suitable and adapted to the purpose for which they are sold and of the kind and quality which fulfills the purpose for which they were originally produced, and in such a physical condition that they will grow after being transplanted, if ordinary care and attention is given them in their planting and cultivation. There can be no doubt, we think, but that an orchardist, or farmer, or any other person purchasing fruit trees for the purpose of raising a commercial orchard, purchases such trees for the purpose of growing and developing a commercial orchard with a view of profit, and with a belief that such trees are in such condition that they will grow if properly planted and cultivated. This being the intention of both the seller and the purchaser at the time the contract of purchase is made, it clearly implies a warranty on the part of the seller that they are of the kind and quality of trees for the use for which they are purchased, and in a healthy and growing condition at the time they are sold and delivered to the purchaser, and that the purpose of the parties to the contract was made a part of the contract of purchase and sale, and constituted a warranty on the part of the seller that the fruit trees ordered and sold were of the kind and in the condition contemplated by both the parties when the contract was made. (*Wolcott v. Mount,* 36 N. J. L. 262, 13 Am. Rep. 438, 38 N. J. L. 496, 20 Am. Rep. 425; *Van Wyck v. Allen,* 69 N. Y. 61, 25 Am. Rep. 136; *White v. Miller,* 7 Hun (N. Y.), 427, 71 N. Y. 118, 27 Am. Rep. 13; *Whitaker v. McCormick,* 6 Mo. App. 114; *Hawkins v. Pemberton,* 51 N. Y. 198, 10 Am. Rep. 595; *Harrington v. Smith,* 138 Mass. 92, and authorities previously cited.)

Conceding, therefore, under the facts of this case, that there was an implied warranty, the evidence clearly shows no conflict in the testimony upon the particular fact that all the trees received were not in a healthy and growing condition at the time they were received, but were in a bad

condition and unfit for planting, and that because of such condition about one-half of the same did not grow and died, and that this resulted from the condition of the trees at the time they were received, and was not the result of any fault or neglect or want of care on the part of appellant after the same were received, and that there was a clear and unquestionable breach of the implied warranty given by the respondent at the time the contract of sale was made; and that there is no evidence in this case which can in any way justify the verdict of the jury in finding that there was due the respondent from the appellant the full price for all the trees sold and received. At most the respondent should not have recovered more than one-half of the value of the trees purchased, and there is no evidence whatever supporting such right of recovery beyond one-half of the purchase price.

It is argued by counsel for respondent that inasmuch as the appellant received the trees upon their delivery, such act was a waiver of any implied warranty. We think the weight of authority, under the facts of this case, holds clearly that the acceptance of the goods does not waive the warranty, and that the warranty survives the acceptance, and where, as in this case, the trees upon their arrival at the place of delivery were found to be in bad condition and unfit for replanting, in whole or in part, the appellant had the option either to reject them or to receive them and rely upon the warranty. And if there was no waiver of this right, the appellant might bring an action against the respondent to recover damages for breach of the warranty, or set up a counterclaim for such damages in an action brought by the respondent for the purchase price of the trees. (*English v. Spokane Commis. Co.*, 57 Fed. 451, 6 C. C. A. 416; *Northwestern Cordage Co. v. Rice*, 5 N. D. 432, 57 Am. St. 563, 67 N. W. 298; *Fairbanks Canning Co. v. Metzger*, 118 N. Y. 260, 16 Am. St. 753, 23 N. E. 372; *Bushman v. Taylor*, 2 Ind. App. 12, 50 Am. St. 228, 28 N. E. 97; *Tacoma Coal Co. v. Bradley*, 2 Wash. 600, 26 Am. St. 890, 27 Pac. 454; *Woodruff v. Graddy*, 91 Ga. 333, 44 Am. St. 33, 17 S. E. 264;

*Morse v. Moore,* 83 Me. 473, 23 Am. St. 783, 22 Atl. 362, 13 L. R. A. 224; *Miller v. Eno,* 14 N. Y. 597; *Getty v. Rountree,* 2 Pinn. (Wis.) 379, 54 Am. Dec. 138, 35 Cyc. 423, 429, 430.)

It is clear that at the time the trees were received by appellant he could not definitely determine whether the trees had reached that stage of decay which would prevent them from growing, and that he had the right to receive them and ascertain whether or not their condition at the time he did receive them was such as to prevent their recovery from such condition by proper care thereafter. (*Shearer v. Park Nursery Co.,* 103 Cal. 415, 42 Am. St. 125, 37 Pac. 412, and other cases cited above.)

It appears from the evidence in this case, and upon which there is no conflict, that the jury in arriving at their verdict figured the amount due the plaintiff as the purchase price, with interest from the date of delivery to the time of trial, and that no damages were allowed to the appellant upon his cross-complaint for the loss he sustained by reason of the fact that many of the trees were in a condition at the time they were received which made it impossible for the appellant to make such trees grow after planting. There is evidence in the record, and upon which there is no conflict, which shows that the appellant's damage and loss, sustained by reason of the failure of the trees to grow, was one dollar for each tree which died after planting, and the jury made no allowance upon this question, and the evidence does not support the verdict of the jury in this regard. It is clear in a case of this kind that where the evidence shows the loss, it may be recovered upon the cross-complaint and counterclaim made, upon the evidence showing breach of warranty and loss. The court also instructed the jury upon the question of damages and directed the jury as to the right of the appellant to recover for such loss, and the trial jury seems to have disregarded this instruction entirely, and failed and refused to find upon this question, notwithstanding the fact that the evidence was all upon one side upon this question, and was in no way contradicted or attempted to be disproven by the respondent. (*Shaw v. Smith,* 45 Kan. 334, 25 Pac.

886, 11 L. R. A. 681; *Shearer v. Park Nursery Co.,* 103 Cal. 415, 42 Am. St. 125, 37 Pac. 412; *Heilman v. Pruyn,* 122 Mich. 301, 80 Am. St. 570, 81 N. Y. 97; *Long v. Pruyn,* 128 Mich. 57, 92 Am. St. 443, 87 N. W. 88.)

It is apparent in this case that the verdict of the jury is not in accordance with the evidence, and the jury also did not follow the law as directed by the instructions of the trial court. For these reasons we are clearly of the opinion that the judgment must be reversed and a new trial granted.

By the record in this case our attention is called to the fact that upon the trial counsel for appellant attempted a number of times to introduce in evidence the original letters, or copies of letters, written by Campbell to Hartley, and by Hartley to respondent in this case, and the court refused to admit such letters upon objection made by counsel for respondent, upon the ground that the warranty had not been proven. The court was clearly in error in refusing the offers made. These letters and orders were part of the transaction of purchase and sale of the trees in controversy, and the letter from Campbell to Hartley was the inception of the transaction, and upon this letter Hartley wrote to the respondent, and upon Hartley's letter the respondent filled the order as directed in the Hartley letter, and these two letters were the conditions and requirements which entered into the contract and which were accepted by the respondent and became a part of the contract of sale, and should have been received in evidence in their regular order, and as presented by the appellant at the trial. In a retrial of the case, if such letters should be offered, they should be received as the specific acts of the parties in making the contract, and the steps which were taken which led up to the making of the order for the trees and the filling of such order by shipping such trees.

The judgment in this case is therefore *reversed,* and a new trial is granted.

Costs are awarded to the appellant.

Ailshie and Sullivan, JJ., concur.