McClure vs. Jefferson and another.

McClure, Assignee, Respondent, vs. Jefferson and another, Appellants.

*February 21 — May 23, 1893.*

*Sale of chattels: Delivery: Waiver of defects.*

Where the purchaser of goods delivered on an executory contract, with full knowledge or with full opportunity for examination and knowledge of their defects, which are open and apparent upon mere inspection, takes them into his possession and appropriates them to his own use without notifying the vendor at the time of receiving them, or within a reasonable time thereafter, that they are not accepted as fulfilling the contract, he cannot recoup·damages for such defects in an action for the contract price.

APPEAL from the Circuit Court for *St. Croix* County. During the times in question Gillespie & Harper were partners, doing business at Stillwater, Minn., and engaged in the manufacture of lumber at Glenmont, in Wisconsin, being on the St. Croix river. The defendants, *Jefferson* and *Kasson*, were partners, doing business as lumber dealers at St. Paul, Minn. On September 7, 1885, the said Gillespie & Harper entered into a contract in writing with said *Jefferson & Kasson*, of which the following is a copy, to wit:
                    "St. Paul, Minn., Sept. 7, 1885.

"This contract, made between Gillespie & Harper, parties of the first part, and *Jefferson & Kasson*, parties of the second part, witnesseth: Parties of the first part have sold to party of the second part one million feet of lumber, to be full thickness and sound, for prompt cash when inspected at our docks in St. Paul, F. O. B. barge, to be delivered during September and October, 1885, and to be included all lengths in logs above ten foot at the following prices: 1st and 2nd clear, 12 feet and over, $30; C stock to 3rd clear inclusive, and 8 and 10 inch 1st and 2nd clear, $20; 1st and 2nd siding strips, $25; 1st fence, $11; 2nd fence, $8; 1st

dim. 18-foot timber, $8; 20 foot and over, $10; 1st common boards, $10; 2nd common boards, $7; 2nd common dim. $5; 14-inch joice, 18 foot and over, $13.50 for 1st common.

"JEFFERSON & KASSON.

"GILLESPIE & HARPER."

On November 4, 1885, Gillespie & Harper made a voluntary assignment for the benefit of their creditors to the plaintiff, *McClure*, who thereupon qualified and entered upon his duties as such assignee. On September 24, 1889, the plaintiff, as such assignee, commenced this action to recover $1,153.40 and interest, as the balance due for lumber delivered by the said Gillespie & Harper to the said *Jefferson & Kasson* under said written agreement. The defendants answered by way of denials and counter allegations, and alleged, among other things, that the said Gillespie & Harper only delivered to them lumber corresponding with the requirements of said contract to the amount of 787,036 feet, of the value of $7,414.51, and the other lumber so delivered by them and received by the defendants contained no more than 36,824 feet, of the agreed value of $501.48; that from time to time the defendants had paid said Gillespie & Harper for the lumber so delivered, in the aggregate the sum of $7,977.87, leaving due them on all the lumber so delivered not to exceed $138; that before the commencement of said action they had tendered to said Gillespie & Harper $300. And in and by the answer they offered to permit the plaintiff to enter judgment against them for the lumber so delivered in the sum of $225, besides the costs of this action up to the trial thereof.

Said cause was thereupon referred to Charles A. Cross, to hear, try, and determine; and at the close of the trial and hearing before said referee he found as matters of fact, in addition to the facts stated, that in pursuance of said written contract the said Gillespie & Harper delivered to the defendants at their docks in St. Paul, in boats or

barges, eight several quantities or bills of lumber of the descriptions therein stated, at the following dates, in the following amounts, and of the following values, respectively: September 19, 1885, 64,025 feet, of the value of $727.06; September 22, 1885, 146,456 feet, of the value of $1,410.01; September 29, 1885, 129,692 feet, of the value of $1,202.45; September 29, 1885, 55,414 feet, of the value of $687.43; October 1, 1885, 22,539 feet, of the value of $227.04; October 3, 1885, 162,518 feet, of the value of $2,201.36; October 8, 1885, 161,642 feet, of the value of $1,608.76; October 12, 1885, 96,878 feet, of the value of $1,005.77; that the said defendants hauled the several quantities of lumber so mentioned, and every part of each and all of them, up into their yard at St. Paul, and took the same into their possession and under their control, and never returned or offered to return the same or any part thereof; that the total amount of the lumber so delivered to the defendants under said written contract is 839,164 feet, and that the total value thereof is the sum of $9,062.88, and that there has been paid thereon the sum of $7,950.93, leaving a balance still due of $1,111.95; that each grade of lumber delivered under said contract was piled by itself on the barges on which it was transported from the mill of Gillespie & Harper, at Glenmont aforesaid, where it was manufactured, to the docks of the defendants at St. Paul, and that each grade or quality of lumber could be recognized as the particular quality at which it was billed to the defendants when shipped to them, and that the shipping bills giving the quantities and quality of the lumber on each barge delivered to the defendants was forwarded to them for their inspection before said barges were unloaded; that the lumber delivered under said written contract could have been sorted and regraded, and, if any rejections were desired to be made by the defendants, such rejections left either on the barge where it was delivered to them, or on their docks

at the landing; that there was no agreement on the part of Gillespie & Harper to accept the grade established by the defendants as to the lumber delivered under said contract; that said defendants never notified Gillespie & Harper that they were reducing the grade of the lumber so shipped by an inspector in their yards, after the same had been hauled from the barges and from the docks of the defendants, and never rendered any bills showing such reduction in grades until all of said lumber had been delivered under said contract, and then only by a bill of the barges of said lumber so delivered, which said bills showed a change in the grade as to three barges and no more, and that said bills were rendered after all of said lumber was delivered, and at the time of rendering said bills the said lumber had been mingled with other lumber, and a part of the same had been sold, and all the same was so commingled with other lumber at some distance from the plaintiff's docks that the same could not, without great trouble and expense, be identified and separated from the other lumber.

And as conclusions of law the referee found, in effect, that said Gillespie & Harper duly performed on their part all the terms of said contract; that, if any of said lumber was not of the quality it purported to be in the bills of lading, then it was the duty of said defendants to have returned to the said Gillespie & Harper at the place where it was delivered to the said defendants, or to have offered to return, such part of it as did not come up to the contract; that the plaintiff is entitled to judgment for the sum of $1,111.95, with interest thereon from October 22, 1885, which amounts in the aggregate to $1,617.87; and that judgment should be entered thereon accordingly.

The report of the referee was confirmed by the court, and judgment for plaintiff rendered accordingly. The defendants appeal.

For the appellants there was a brief by *H. L. Humphrey*, attorney, and *Owen Morris*, of counsel, and oral argument by *Mr. Morris*.

*Ray S. Reid*, attorney, and *Fayette Marsh*, of counsel, for the respondent.

The following opinion was filed March 21, 1893:

CASSODAY, J.    From a careful examination of the record we are convinced that the findings of fact by the referee, confirmed by the trial court, are sustained by the evidence. From these findings it appears, in effect, that all the lumber delivered was graded at the mills at Glenmont, Wis., by an employee of Gillespie & Harper, and that each and every grade or quality thereof was piled by itself on the barge on which it was transported to the docks of the defendants at St. Paul, in such a way as to be readily distinguished upon inspection; and that the quantity of each grade or quality was stated on the shipping bill of each cargo, and each of such shipping bills was forwarded to the defendants for their inspection on or before the barge containing the lumber described therein was unloaded. There seems to be no question but that as each cargo reached said docks and was there unloaded and drawn up into the yards of the defendants and there piled, the title thereto became vested in the defendants, who thereupon became liable for the payment thereof.    The contract expressly required prompt payment for each cargo delivered, in cash, when inspected at said docks.    The contention is, in effect, that the failure of Gillespie & Harper to furnish a man to participate in such inspection justified the defendants in regrading the lumber, and in reducing the grade thereof by taking lumber from the higher grades mentioned in such shipping bills and putting the same into lower grades, and in rejecting portions thereof as not com-

ing within any of the terms of the contract, but retaining the same, subject to the payment therefor of its value. Certainly, the defendants were not obliged to receive lumber as complying with the grades mentioned in the shipping bills when such lumber or any portion thereof fell below such grades or failed to comply with the terms of the contract; but to relieve themselves from such obligations the law required them to notify the vendors, at the time of receiving each barge, or within a reasonable time thereafter, that the same was not accepted as complying with the terms of the contract or the shipping bill. As found by the referee and trial court, no such notice was ever given. It is well settled that where, as here, the purchaser of goods delivered on an executory contract, with full knowledge, or with full opportunity for examination and knowledge, of their defects, which are open and apparent upon mere inspection, takes them into his possession and appropriates them to his own use without notifying the vendor at the time of receiving them, or within a reasonable time thereafter, that they are not accepted as fulfilling the contract, he cannot recoup damages for such defects or failures in an action for the contract price. *Locke v. Williamson*, 40 Wis. 377; *Morehouse v. Comstock*, 42 Wis. 626; *Olson v. Mayer*, 56 Wis. 551; *Gill v. Benjamin*, 64 Wis. 371. This disposes of the principal question in the case.

It was certainly competent to prove the different kinds, grades, qualities, and quantities of lumber contained in each cargo sent to the defendants, and the shipping bills thereof, and that the defendants made no objection to any of them. The answer expressly admits that the defendants received 823,860 feet of the lumber so shipped, and this is nearly the amount found by the referee. Besides, the books of Gillespie & Harper were properly verified as re-

quired by the statute, and hence were properly admitted in evidence.

*By the Court.*— The judgment of the circuit court is affirmed.

A motion for a rehearing was denied May 23, 1893.