A. GRAFF v. D. M. OSBORNE & CO.

No. 7725.

1. CONTRACT—*Construction—Ambiguities.* Where a contract is concluded between the parties by letters, if, in a letter written by one of them, there be any ambiguity or contradiction in terms, doubts as to its meaning will be resolved against the writer.

2. SALE OF GOODS—*Inferior Quality—Remedies of Buyer.* Where merchandise is sold under an executory written contract, and the goods delivered are inferior in quality to those contracted to be sold, the buyer is not restricted in his remedy to a return of the goods and rescission of the contract, but may retain the inferior articles delivered, and, in an action for the purchase-price, may recoup the damages he has sustained by reason of the breach of the seller's contract.

*Error from Sumner District Court.*

D. M. OSBORNE & Co. sued Graff on a verified account for binding twine sold and delivered, and demanded judgment for $1,611.30 and interest. Graff filed a long answer, alleging in substance that the twine was bought by sample from the agent of the plaintiff; that it was expressly warranted to be of the best quality; that a part of the twine delivered corresponded with the sample and complied with the warranty; but that 14,020 pounds was wholly unfit for the purpose for which it was purchased. The defendant claimed damages in a large sum on account of the breach of the warranty. A jury having been impaneled to try the case, the burden of proof being on the defendant, he proceeded to introduce his testimony. The defendant himself took the witness-stand, and testified with reference to the transaction between himself and Wilson, the agent of the plaintiff, which resulted in a contract for the purchase of the twine. After having testified to the exhibition by Wilson of various samples of binding twine, and to subjecting them to tests of their strength, and stating that a contract was then made for the purchase of the twine, counsel for the plaintiff asked and was given leave to cross-examine the witness as to the contract. On this cross-examination it was developed that a written agreement was made for the purchase of "60,000 pounds silver binding twine," at 11½ cents a pound. The contract provided as to the time and manner of payment and as to the delivery and shipment of the twine, and was signed in the name of the plaintiff by Wilson, as agent, and by Graff, but provided that it should not be valid until approved by the manager or one of the officers of the plaintiff corporation. On the

margin was written a guaranty in the following terms : " The silver cord is hereby guaranteed to work as well as any other cord when used. according to directions." The contract was dated March 27, 1889. This contract was forwarded from Wellington, where it was made, to the office of the plaintiff's manager at St. Louis, who erased the guaranty, and under date "4–5–89" wrote a letter to the defendant in which he said, among other things :

"We have to say we have in no case consented to any of our travelers writing any kind of a guaranty on our twine, simply for the reason it is unnecessary. We deal in nothing but first-class twine, and take every precaution to get the best, and, as we said before, it is quite unnecessary for us to make any guaranties ; not that we fear there would be any risk in doing it, but it is not business at the present condition of the twine market, as we can sell more twine than we can get, and at better prices than those named you in your contract. You, however, are not running any risk in buying twine from D. M. Osborne & Co., as we are entirely responsible, and could not at any price afford to sell you anything but a good article." ·

On the receipt of this letter, the defendant answered as follows :

"WELLINGTON, KAN., April 8, 1889.

"D. M. Osborne, St. Louis : GENTS—Yours of the 5th instant came to hand this morning. I had not read it before writing you earlier in the day. In reply will say, that I will accept the contract, relying, however, on the declaration contained in your letter of the 4–5–89. Respectfully yours,    A. GRAFF."

This contract and these letters being read in evidence by the plaintiff, the court excluded all further testimony with reference to the quality of the twine and its value, unless the defendant would undertake

to show that it was wholly valueless to any person· for any purpose. The defendant sought in many ways to show that the twine did not correspond with the sample and was not first-class twine, and to prove his damages, but the testimony was all ruled out by the court. A verdict was directed for the plaintiff for the amount claimed, and judgment entered thereon. The defendant brings the case to this court.

*W. W. Schwinn*, and *Tom George*, for plaintiff in error.

*C. E. Elliott*, and *H. L. Woods*, for defendant in error.

The opinion of the court was delivered by

ALLEN, J. : The view we take of this case renders it unnecessary to consider the subject of implied warranties, so fully and ably discussed in the briefs. The rights of the parties were fixed by the written contract and the two letters read in evidence. If the description of the article sold were to be taken solely from the contract of March 27, 1889, the plaintiff might find it somewhat difficult to prove that it had ever delivered silver binding twine. Of course, none of the parties to the agreement understood that there was to be any silver in the twine. This is made clear by the letter written by Mr. Terpenning, the plaintiff's manager at St. Louis, under date "4–5–89." This letter, while denying the authority of Wilson to· guarantee, and insisting on an erasure of the clause written on the margin by him, makes the direct statement and representation "We deal in nothing but first-class twine." The defendant, by his letter of the 8th, put the plaintiff directly on notice that he relied on the declaration contained in Terpenning's

letter. As the defendant could not possibly inspect the twine before it was purchased, he had a right to rely on the statement in the letter of the plaintiff's manager as to the quality of the goods to be furnished. If the plaintiff failed to furnish first-class twine as represented, he had a right to a reasonable time after receipt of the twine in which to inspect it, rescind the whole contract, and return the goods received, or, if he so elected, he had the right to retain the inferior article, and recoup the damages sustained by reason of the failure of the plaintiff to furnish goods of the proper quality.

The judgment is reversed, and a new trial ordered.

All the Justices concurring.