## D. M. Osborne & Company v. Fritz Walther.

(Filed July 18, 1902.)

1. **CONTRACT—Written Warranty—Evidence of Defendant. D. M.** Osborne & Co. sold Walther a harvester for $20 cash and two notes of $50 each. Walther failed to pay the notes when due, and Osborne & Co. brought suit to recover on the notes, and Walther set up an oral warranty and failure of the machine to comply with the terms of the warranty. Osborne & Co. replied that the machine was sold under an express written warranty, different in terms from the alleged oral warranty. On the trial Walther testified in one instance that the written warranty was not delivered to him until after the contract for the machine had been consummated and machine delivered, and on rebuttal testified that the written warranty was given to him at the time the notes were signed and contract made. **Held,** that his evidence should be construed unfavorably to him and that the written warranty was part of the agreement of sale as shown by his evidence, and that it was error to exclude it from the jury.

2. **NOTES—Stipulations—Election of Alternative.** Where an article is sold and notes given for part of the purchase price, which contain provision that the title to such property shall remain in the seller until the notes are paid, such provision is for the benefit of the seller and he may elect to treat the sale as absolute, and sue on the notes, and a suit to recover judgment on the notes constitutes such an election.

3. **WARRANTY, FAILURE OF—Remedies.** Where a machine is sold accompanied by a warranty as to fitness, and the machine delivered, and part of the purchase price paid, on failure of the warranty the purchaser has two remedies at his election; he may keep the machine and recoup or recover in damages the difference between the price agreed to be paid and the actual value of the machine, together with a fair compensation for the loss incurred by an effort in good faith to use it for the purpose warranted. Or, he may promptly return the machine as soon as he discovers the defects, and recover the consideration paid, or offer to restore the same on condition that the seller shall return all received by him.

(Syllabus by the Court.)

*Error from the District Court of Canadian County; before C. F. Irwin, Trial Judge.*

*C. O. Blake, E. E. Blake, W. T. Beeks* and *Don C. Smith,* for plaintiff in error.

*E. J. Simpson* and *Marsh & Wallace,* for defendant in error.

Opinion of the court by

BURFORD, C. J.: On June 10, 1898, the plaintiff in error, D. M. Osborne & Co., a corporation, through its agent, J. W. Hughes, at El Reno, Oklahoma, sold to the defendant in error, Fritz Walther, a harvester and binder for the consideration of one hundred and twenty dollars, payable twenty dollars cash, and the balance in two equal installments of fifty dollars each, the first to be paid September 1, 1898, and the second September 1, 1899. The defendant, Walther, executed his two promissory notes for the deferred payments, bearing interest at ten per cent from date, and ten per cent attorney's fees if not paid when due. By the terms of these notes, both notes were to become due on failure to pay the one falling due first. Each note also contains this provision:

"The express condition of the sale and purchase of the machine for which this note is given, is such that the title, ownership or right of possession does not pass from the said D. M. Osborne & Co., until this note and interest and all other notes given for the same purchase, are paid in full."

Walther paid the twenty dollars, executed the notes, and the machine was delivered to him at Hughes' store, in El Reno. The sale was accompanied by either an oral or written guarantee as to fitness and working qualities. The trial court excluded the written guarantee on the ground that the evidence showed that it was not a part of the

agreement of sale, but was delivered to the defendant subsequent to the time the sale was consummated, and held that the oral guarantee was controlling. We will review this question later.

The defendant failed to pay the notes, and in January, 1899, the plaintiff brought this action in the district court to recover judgment on the notes. As a defense to this action the defendant admitted the execution of the notes, but alleged that they were executed in part consideration for one binder which:

* * * "Was represented to this defendant by said plaintiff to be capable of doing, performing and accomplishing good and satisfactory work as a harvesting machine, and that said representations and guarantee failed in this, towit: Said self binder utterly failed to perform and accomplish good and satisfactory work as a harvesting machine, and that said plaintiffs were duly notified of such failure, thereby causing the consideration for which said notes were given to utterly fail.

"The defendant further answering alleges and says: That relying on the plaintiffs' representation, he paid to said plaintiff the sum of twenty dollars in cash, and executed and delivered to them the said notes sued on. Such representations being the consideration which caused the defendant to make said payment and execute said notes.

"Wherefore defendant prays that said notes be canceled, and that he recover judgment against the plaintiff for the sum of twenty dollars and the costs, * * * *," etc.

To this answer the plaintiff replied, setting up the following written guaranty, which it was alleged accompanied the agreement of sale, towit:

"REMOVE THIS WARRANTY AND GIVE TO PURCHASER.
"*Warranty.*

"This implement is warranted to be well made, of good material, and if properly set up and operated, to do good work. If, upon one day's trial, the machine should not; work well, the purchaser shall immediately notify the local agent who sold it and D. M. Osborne & Co., Auburn, N. Y., and allow reasonable time for some one to be sent to put it. in order. If it is not then made to do good work, it must. be returned at once to said local agent at his place of business, and any payments made thereon will be refunded. Continuous use of the machine, or use at intervals through the harvest season, or failure to notify D. M. Osborne & Co., and their agent, or failure to return the machine as agreed, shall be deemed an acceptance of the machine by the purchaser.

"No variation of this order, oral or written, will be recognized by us.

"D. M. OSBORNE & *Co.*"

On these issues the case was tried to a jury, and a verdict returned in favor of defendant for twenty dollars.. Judgment was rendered accordingly, and after properly saving the questions presented by motion for new trial, the plaintiff brings the case here on error for review.

On the trial it was clearly established by the defendant that at the time he purchased the machine, the local agent represented to him that the harvester was a good machine and would do good work; that he began cutting his wheat with the machine, and the binder would choke up, and failed to properly bind up the sheaves, and in heavy or down grain would not work at all. He notified the agent, Hughes, of such failure and Hughes sent out an expert to adjust the machine, who worked on it and operated it, but failed to

remedy the defects, and after repeated efforts to make it do satisfactory work as a binder, and after having cut considerable grain with it, he was compelled to have a different machine to complete his harvesting, and that he set this machine out at his place, where it still remained at the time of the trial, neither party ever having made any attempt to use it after the first season.

Under the evidence, it clearly appears that the machine failed to perform its work in the manner required, either by the terms of the oral warranty relied upon by defendant, the written warranty pleaded by the plaintiff, or the warranty which the law implies in such cases in the absence of an express warranty. One of the principal questions to be determined is whether the oral warranty relied upon by the defendant, or the written warranty set up by the plaintiff, is the one which controls in this case. Both parties plead an express warranty, hence the question of implied warranty is not to be considered. The defendant testified that he purchased the machine from an agent at the store of Mr. Hughes; that he had talked with Mr Hughes several times about purchasing the machine, and that he said the machine would do just as good work as any other machine sold in the town, and would work all right to his satisfaction. That after he had bought the machine and signed the notes, and was on the wagon ready to pull out, he was given the written guaranty and told to keep it, which he did, and produced it at the trial, and that he had not read it.

J. W. Hughes testified that he was agent for D. M. Osborne & Co., in 1898, and sold the machine in question to Mr. Walther; that he told Walther that the machine would do as good work as any machine. He did not recol-

lect delivering the written warranty, but that it was delivered by some one about his place of business.

On rebuttal, the defendant testified as follows:

"Question. Where were you when this warranty was given you, Mr. Walther? Answer. Up there in Mr. Hughes' store .

"Ques. When you signed the notes? Ans. After I had them signed.

"Ques. While you were still in the store there? Where did you sign the notes? Ans. In the store.

"Ques. Who took the notes? Ans. Hughes, I guess, young Hughes.

"Ques. And at that time the warranty was given you? Ans. Yes sir.

"Ques. You signed an order like that for the machine? (handing the witness a paper.) Ans. I signed a contract, that is what they called them.

"Ques. And then that was torn off the end and handed you? Ans. I do not remember."

There appears a material conflict in the defendant's own testimony. When his attention was first called to the written guaranty, or "slip" as it was called on the trial, he stated that it was handed to him while on his wagon, when he was just ready to pull out. But afterwards, when he was called in his own behalf on rebuttal, he testified that it was given to him in the store at the time he signed the notes sued on, and after signing the notes. If this written warranty was delivered to defendant at the time he executed the notes and constituted a part of the transaction of the purchase of the machine, it then becomes a material part of the agreement, and is binding upon both parties, and excludes all previous oral representations and state-

ments leading up to the consummation of the contract. The determination of this question must depend upon the defendant's own testimony and the accompanying circum-stances.

The general rule is that the testimony of a person in his own behalf must be construed most strongly against him, and where there are apparent conflicts in his testi-mony, one part favorable and the other unfavorable to him, that must be accepted and given the greater weight which is unfavorable to his interests. The written guar-anty and the notes in question relate to the same subject-matter; are between the same parties, and were passed be-tween the contracting parties on the same day. One re-ceived and kept the notes; the other received and kept the machine, and written warranty. In the absence of any allegation to the contrary, it would be presumed that the written warranty and notes were contemporaneous parts of the same transaction, and constitute the terms of the sale and warranty. The defendant admitted that it was delivered to him, and we think his own evidence failed to overcome the presumption that it was delivered to him at the time the sale of the machine was finally consummated, and the papers executed. Under the defendant's own testimony, we think the trial court should have let the written guaranty go to the jury, and that it was error to exclude it.

But whether the sale of the harvester was accompanied by an oral or written warranty, in either event we think the trial court misdirected the jury in the instruction num-bered 2. The transactions between the plaintiff and defendant as shown by the evidence, constituted an executed con-

tract of sale, accompanied by a warranty as to fitness and working qualities of the machine. It is true by the terms of the notes the title to the machine was not to pass to Walther until the notes were paid, but this was a condition for the benefit of the plaintiffs, and might be waived by them. By their election to sue on the notes for the purchase price of the machine, they waived this clause in the notes, and title passed to the defendant. The warranty, whether oral or written, did not change the legal effect of the sale. The plaintiff warranted the machine to do good work. If the machine failed to come up to the warranty, the defendant had a right to follow one of two courses at his election. He could either keep the machine and recover or recoup in damages the difference between the value of the machine in its imperfect condition and the purchase price together with a fair compensation for the loss incurred by an effort in good faith to use it for the purpose for which it was warranted, (Sec. 2631, Stat. 1893;) or, he could have elected to rescind the contract, in which event the law required him to act promptly upon discovering the defects in the machine, and to restore or return it to the plaintiff, or to offer to restore it on condition that the plaintiff would return the notes executed and money paid. (Secs. 866 and 868, Stat. 1893.) There is no evidence to the effect that the defendant ever made any effort or offer to rescind the contract, and he was in no position to recover the money paid on the purchase price until he had made such prompt effort to restore the property as the law requires.

The trial court treated the sale of the machine as a conditional sale, and the terms of the warranty as the terms of the conditions, and instructed the jury that if the plain-

tiff sold the machine to the defendant and warranted the machine to do good work, and the defendant gave the machine a fair trial and it was defective and would not do good work, and that he notified the plaintiffs of such defective condition and failure to perform its work, and they failed to make it do good work, "then the defendant was under no obligation to keep the said machine, but that it was the duty of the plaintiffs to take the said machine away and to pay back to the defendant what he had paid thereon, and in this case the plaintiff cannot recover for the value of said machine, and the jury should render a verdict in favor of the defendant for the twenty dollars paid to the plaintiffs by the defendant as a part of the purchase price of said machine." We do not think this instruction correctly states the law as applicable to the issues and evidence in this case. The instruction is also subject to a more serious objection. While from the entire charge to the jury we do not think the court intended to take any question of fact from the jury or to direct their verdict, yet the language used is clearly susceptible of such construction, and was misleading to the jury. The jury are told that "in this case the plaintiff cannot recover for the value of said machine, and the jury should render a verdict in favor of the defendant for the twenty dollars paid to plaintiffs." This left nothing for the jury to try, and they probably so understood it. The court probably meant to tell the jury that if they found the facts for the defendant as embraced in the first part of the charge, then the plaintiff would not be entitled to recover; but if it did, the language used to express such idea is too inapt to convey such meaning to the untrained mind.

There are other alleged errors complained of, but as

they are not likely to occur upon a retrial of the cause, we will not now discuss them.

For the errors in excluding the written warranty upon the evidence as shown by the record and in giving instruction number 2, the judgment of the district court of Canadian county, is reversed at the costs of the defendant in error, and the cause remanded with directions to grant a new trial.

Irwin, J., who presided in the court below, not sitting; all the other Justices concurring.