A. L. PATRICK, APPELLEE, V. NORFOLK LUMBER COMPANY ET AL., APPELLANTS.

FILED MARCH 19, 1908.   No. 15,124.

1. **Pleading: NAME OF PLAINTIFF.** In an action on account, the plaintiff should sue in his Christian name.

2. ————: **OBJECTIONS TO EVIDENCE.** In an action on account, defendant cannot, by objecting to the introduction of evidence, take advantage of the fact that plaintiff has not set out in the petition tiff should sue in his Christian name.

3. **Sales: WARRANTY.** If posts are sold by a particular description, such description is part' of the contract of sale, and does not constitute an implied warranty of quality.

4. ————: **WAIVER.** E. purchased from P. a car-load of lime, plaster and cement, and paid therefor about six weeks after its receipt. Thereafter E. ordered a car-load of cedar posts from P., giving in his order the numbers and dimensions of the posts desired. A car loaded with posts varying somewhat in size and number from the order was delivered by P. to E., who received the same without objections, and sold the greater part thereof, making no complaint to P. that the posts did not comply with the specifications in the order. About 50 days after the receipt of the posts E. claimed to P. there was a deficiency in number and dimensions of the posts, and, after P. placed his account against E. in the hands of an attorney for collection, E. also made claim that the lime purchased was inferior in quality. *Held*, E. had waived the right to object to the quality of the lime, or that the posts in the car were deficient in dimensions or not equal in number of the invoice thereof.

5. **Trial: DIRECTING VERDICT.** Evidence examined, and *held* to justify the court in directing a verdict for plaintiff.

APPEAL from the district court for Madison county: JOHN F. BOYD, JUDGE. *Affirmed.*

*Isaac Powers* and *Barnhart & Koenigstein,* for appellants.

*Mapes & Hazen, contra.*

ROOT, C.

Action on account for a balance due on a car-load of posts sold by' plaintiff to defendants, and' for 40 sacks which contained plaster sold and delivered defendants by

plaintiff.  The petition is brief and indefinite in statement.  Concerning the posts, the statement is made in the pleading "that on the 22d day of August, 1904, the plaintiff, at the instance and request of the defendants, sold and delivered to the defendants a car of posts, and at the price at which said posts were sold to the defendants said car of posts amounted to the sum of $266.20." A credit of $125.28 is allowed for freight paid by defendants on the car.  It is further alleged that plaintiff sold and delivered to defendants a car of lime and plaster, and defendants agreed to return the sacks wherein the plaster had been shipped, but had failed to send back 40 thereof. Defendants Emery & Emery are sued individually and joined with the Norfolk Lumber Company, a firm of which they are the sole members.  To this petition the Emerys filed a general denial.  The lumber company denied all allegations in the petition not by it expressly admitted; admitted it received from plaintiff a car of lime and a car of posts, but alleged that the lime was not of the kind or quality which plaintiff was to furnish defendant; that said defendant paid for the lime before it had the opportunity to examine and test it, and when tested the lime was found to be inferior in quality, air slacked, and almost worthless; that by reason thereof said defendant was unable to sell or dispose of much of said lime, and that the lime was not worth as much by $45 as was the lime plaintiff was to furnish defendant; that the posts shipped by plaintiff to defendant were not of the kind, quantity and quality which it bought of plaintiff, and that said posts were not worth as much by $50.78 as the kind and quantity so agreed to be furnished to the defendant; alleged it had returned all the sacks received from plaintiff, and admitted itself indebted to plaintiff in the sum of $50.  Plaintiff in reply generally denied any inferiority of the posts and lime sold by him to defendant lumber company; alleged that said defendant had ample opportunity to examine and test the lime, and paid for the same without protest, and is estopped to claim damages

therefor; denied that the posts were inferior in kind or quality to those sold defendant, or that they were short in quantity as alleged; alleged that the posts were received in Norfolk October 10, were unloaded, counted and retained by defendants without complaint till November 19, and that defendants thereby accepted the posts, and are estopped from claiming damages therefor. In response to plaintiff's request at the close of the evidence, the court directed the jury to find a verdict for Patrick. Defendants claim three errors: (1) That the court erred in not compelling plaintiff to amend his petition by setting out his Christian name in full; (2) in taking the case from the jury, in that there was evidence of a warranty on the part of plaintiff of the goods sold defendants, and (3) that there was included in the verdict $4 for sacks claimed in the petition not to have been returned to plaintiff by defendants, but actually sent back to him, as shown in the bill of exceptions.

1. Plaintiff should have commenced his action in his proper name, and without pleading to that effect it can hardly be said that A. L. Patrick is that complete name, although it is possible. *Scarborough v. Maybrick,* 47 Neb. 794. However, the defect is a technical one, and to avail defendants must have been properly presented to the trial court. This was not done. Defendants, upon the introduction of evidence, objected thereto on the ground that plaintiff did not have legal capacity to sue. It was held 24 years ago by this court in *Smelt v. Knapp,* 16 Neb. 53, that "an objection to the name in which a plaintiff brings suit cannot be raised by an objection to the jurisdiction of the court. It should be done, if at all, by plea in abatement." In *Davis v. Jennings,* 78 Neb. 462, we again held that objection to a misnomer must be raised by a pleading in the nature of a plea in abatement, and suggested that a motion would serve all purposes. Defendants, not having filed a motion suggesting the misnomer and requesting the court to compel plaintiff to set out in the petition his full name, waived the objection.

2. The petition and the lumber company's answer are alike indefinite, and it is questionable whether the allegations contained in the answer can be said to amount to a charge that plaintiff impliedly warranted the lime or the posts. The parties introduced evidence without much regard to the allegations in their respective pleadings, so it becomes necessary to examine the evidence to ascertain the issues tried. So far as the lime is concerned, the car containing cement, lime and plaster was shipped from Omaha September 15, and received four or five days later. It was paid for without objections on the 31st of October. August 6, 1904, defendants gave plaintiff a written order for a car-load of posts. The order calls for seven different sizes of posts, the exact number of all but those $6\frac{1}{2}$ feet in length, No. 1 splits, is given. The last-named size was to be in number sufficient to fill out the car-load, and, of necessity, might vary according to the size of the car furnished by the railway. The order was for a car-load of posts, and was not severable as to the different classes enumerated in the order. *Pacific Timber Co. v. Iowa W. M. & P. Co.*, 135 Ia. 308. Plaintiff resides in Omaha, where he transacts his business, but he sent the order to a man in Tennessee to be filled, who loaded a car with red cedar posts and shipped them to defendants at Norfolk, where the car was received, as shown by the bill of lading, October 10. Defendant Emery says he thinks the car arrived as late as October 14 or 15, but the waybill is in all probability correct on this point. The posts were unloaded, and Emery says he noticed they did not grade according to his order, whereupon he repiled them, sorting the various sizes each by itself and counted them; that it was then found that, instead of 1,200 posts, as called for in the invoice, there were but 1,096 posts, and they were not of the sizes called for in the order, nor entirely as indicated in the invoice. Plaintiff's suit is for the number and dimensions of posts enumerated in the invoice, which is identified by the shipper Dies. According to the plaintiff, the car-load of posts shipped as

per Dies' testimony would be of the value of $266.20 delivered in Norfolk, and, deducting the freight, $125.28, would leave a balance of $140.92. Defendant Emery insists the deficiency in size and number of the posts would bring the value of the car-load down to $210.42, and, deducting the freight, would leave but $82.14 due plaintiff thereon. Dies says he attended to the loading of the car, and knows it was sealed, and contained the posts in number and size as indicated by his books, a copy whereof he attaches to his deposition. October 31, 1904, defendants remitted to plaintiff for the car of lime, cement and plaster, and in the letter referred to the posts: "We have the R. C. Pts. and will make report and send freight bill in a day or two with remittance." This was 3 weeks after the arrival of the posts in Norfolk, if we take the statement in the bill of lading as correct, and 16 to 17 days thereafter, if we take defendant Emery's testimony as establishing the day the posts arrived there, and after he had transported them to the lumber yard, sorted them over, ascertained the grade and number of the posts, and, of necessity, knew they were neither up to the specifications in his order, nor to those set forth in the invoice. A letter was sent plaintiff by defendant Emery under date of October 20, containing an itemized statement of the number and dimensions of the posts contained in the car from Tennessee, showing a balance due plaintiff of only the $85.14, after payment of the freight bill, and with the statement: "Please send us credit for difference. Would be pleased to have you come and inspect this shipment Norfolk." Mr. Emery says this letter was mailed not later than the day after its date. Plaintiff says he received it November 19, and exhibits the envelope with the Omaha post-office stamp of November 19, which he says inclosed the letter. He replied thereto November 22, refusing to go to Norfolk, and claimed the demand was not made within a reasonable time, nor so as to permit him to verify the claim of shortage, and insisting that defendant must pay as per the invoice. The record is con-

vincing that defendant Emery dated his letter back from November 18 or 19 to October 20, and the rights of the parties with respect to the posts should be settled on the basis that the posts were received October 10, and were retained without objection for 50 days or thereabouts, although any deficiencies in dimensions and numbers of the posts were apparent, and, as a matter of fact, ascertained and known by defendants within a few days after the receipt of the material.

Defendants insist there was a warranty and evidence of a breach thereof sufficient to entitle them to go to the jury. The record is barren of proof of an express warranty. The fact that the order was for a car-load of posts of certain dimensions, and that plaintiff undertook to fill that order, did not create a warranty by plaintiff that the posts would be in number and dimensions to correspond with the direction. But it was a condition precedent to defendants' obligation to receive and pay for the posts that their size and number equalled their order. As said by Mr. Justice O'Brien in *Carleton v. Lombard, Ayres & Co.,* 149 N. Y. 137, and quoted with approval by Mr. Justice Bartlett in *Waeber v. Talbot,* 167 N. Y. 48, 82 Am. St. Rep. 712: Words of description "are not considered as a warranty at all, but conditions precedent to any obligation on the part of the vendee, since the existence of the qualities indicated by the descriptive words, being part of the description of the thing sold, becomes essential to its identity, and the vendee cannot be obligated to receive and pay for a thing different from that for which he contracted. * * * The tendency of the recent decisions in this court is to treat such words as part of the contract of sale descriptive of the article sold and to be delivered in the future, and not as constituting that collateral obligation which sometimes accompanies a contract of sale and known as a warranty." We do not say defendants were under any obligation to accept the car-load of posts, and, as the deficiency in the number and size of the posts was not patent without unloading

the car, they doubtless had the right, in the absence of an invoice demonstrating the car-load was not up to their order, to take the posts from the car and count and inspect them, and, upon learning the deviation from the order, had the right to refuse to accept the posts, and in that event should promptly notify plaintiff, or they could waive the difference between what they had bought and the timber sent them. And if without notice or complaint to plaintiff they took the course they did of hauling the posts to their yard, and selling part of them to the trade, for a period of some 50 days, they are without standing in court. *Wacber v. Talbot,* 167 N. Y. 48. In *Roman v. Bressler,* 32 Neb. 240, we held the buyer could not receive corn upon an executory contract, and, after shipment to a distant market, defeat recovery of the contract price on the ground that the grain was of inferior quality. See, also, *Havens & Co. v. Grand Island L. & F. Co.,* 41 Neb. 153; *Hazen v. Wilhelmie,* 68 Neb. 79; *Locke v. Williamson,* 40 Wis. 377; *Northern Supply Co. v. Wangard,* 117 Wis. 624.

In *Buick Motor Co. v. Reid Mfg. Co.,* 150 Mich. 118, 113 N. W. 591, it was held in the sale of machinery there was an implied warranty that the goods were merchantable and reasonably fit for the use intended; and that court further say that the purchaser of goods under an implied warranty has a reasonable time after receipt in which to inspect them, and, on finding defects, he must refuse to accept, or he will be estopped from setting up discoverable defects.

As to the lime, defendant Emery claims he did not know when he paid therefor, that it was air slacked, dead, and of little value, and that he had a right after discovering that defect to recoup his damages. The difficulty in defendant's case is that there is not a particle of proof that the lime did not air slack while in their possession, nor scintilla of evidence to show the lime was at all deficient when it came into their possession. Moreover, the answer says: "It was not worth as much as defendant

21

agreed to pay and did pay the plaintiff for the quality of lime plaintiff was to furnish defendant by at least $45." In this regard the case parallels *Kessler & Co. v. Zacharias*, 145 Mich. 698, wherein Chief Justice Carpenter said: "It is also contended that error was committed by the trial court in refusing to permit defendant to show that the whiskey purchased by him 'was not worth what he promised to pay for it. This ruling was also correct. No authority need be cited for the proposition that one is not released from an obligation to pay for property merely because he agreed to pay too much for it." However, the transaction concerning the lime is within the scope of the authorities cited relative to the car-load of posts. The court will take judicial notice of the action of air upon lime. It is also apparent that an examination of the lime at the time of its receipt would have given defendants information that it was unsuitable for use, if that was its condition at that time. Not only was the lime paid for without objection, six weeks after its receipt, but it is undisputed that complaint was not made concerning this material till plaintiff placed his bill for the posts in the hands of Norfolk attorneys for collection.

3. It is claimed that the court should not have directed recovery for the 40 empty sacks referred to in the petition. The direction to the jury was not to find the amount of plaintiff's claim, but merely to find for the plaintiff. Upon the trial of the case plaintiff's attorneys withdrew that item from the jury, and said they would not contend therefor. The amount of the verdict is some cents less than the balance due for the posts, with interest, in accord with the terms of the invoice, so defendants are not bound by a judgment which includes the $4 for non-return of the sacks.

Upon the entire record, we are satisfied the court did not err in directing a verdict. We therefore recommend that the judgment of the district court be affirmed.

FAWCETT and CALKINS, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.