J. ROSENBAUM GRAIN CO. v. POND CREEK MILL & ELEVATOR CO.

No. 2141, Okla. T.   Opinion Filed November 13, 1908.

(98 Pac. 331.)

1.   NEW TRIAL—Sufficiency of Evidence.   On motion for new trial, the court will not set aside a verdict of the jury where there is evidence reasonably tending to support the same.

2.   SALES—Defective Quality—Rights of Buyer.   Where wheat is sold under an executory contract, and the wheat delivered is inferior in quality to that contracted to be sold, the buyer may retain the inferior wheat delivered, and recover the damages he has sustained by reason of a breach of the seller's contract, without returning the wheat, or giving any notice to the seller.

(Syllabus by the Court.)

*Error from District Court, Grant County; James K. Beauchamp, Judge.*

Action by the J. Rosenbaum Grain Company against the Pond Creek Mill & Elevator Company.   Judgment for defendant, and plaintiff brings error.   Reversed.

This action was brought in the district court of Grant county by plaintiff in error, plaintiff below, to recover from defendant in error, defendant below, the sum of $326.26, with interest.   The amount sought to be recovered, as alleged by plaintiff in his petition, is a balance due on overdrafts attached to bills of lading for grain sold by defendant to plaintiff.   Plaintiff alleges that during the years 1903 and 1904 plaintiff purchased from defendant, at different times, car load lots of wheat upon offers of a cer-

tain price made by plaintiff and accepted by defendant, and that, upon being notified of the acceptance by defendant of each order made by plaintiff, plaintiff in a written communication confirmed each purchase, · and that by the terms of said purchase, as evidenced by the letters of confirmation, it was agreed that the weights and grades should be the weights and grades taken in Ft. Worth, Tex. Plaintiff alleges that in this manner several car loads of grain were purchased by plaintiff from defendant and shipped by defendant from Pond Creek, Okla., to plaintiff at Ft. Worth, Tex.; that at the time of making each shipment defendant, before the weight and grade of any such shipments had been ascertained at Ft. Worth, drew a draft upon plaintiff for the estimated amount of any such shipment, which draft was paid by plaintiff when presented; that plaintiff paid drafts thus drawn by defendants in the total sum of $9,311.21; and that the total amount of the purchase price of the wheat shipped by defendant to plaintiff in the various shipments according to the grades and weights at Ft. worth, Tex,, amounted to $8,984.95, leaving a balance due the plaintiff in the sum sued for. A copy of the communication signed by plaintiff confirming each purchase was attached to plaintiff's petition, and is in words and figures as follows:

"Chicago, Ill.　　　　　　　　　　　　Ft. Worth, Texas.
　　"217 Rialto Building.　　　　　　　　Wheat Building.
　　　　　"J. Rosenbaum Grain Company.
　　　　　　　　(Incorporated)
　　　　　　　"Grain and Seeds.
　　　　　　　　"Ft. Worth, Texas, ......................, 190.......

"Pond Creek Mill & Elevator Co., Pond Creek, O. T.

　　"Dear Sir: We confirm purchase from you to-day of ...............
cars ........................... bushels, No. 2 Hard Wheat at ................ delivered
........................ f. o. b. ......................... shipped within ......................... days by
Fort Worth, Texas, weights and grades. Ship to J. Rosenbaum Grain Co., North Fort Worth, Texas, and don't fail to note on B. L. 'For Export'; Make draft on us B. L. attached, at Fort Worth, Texas, leaving fair margin.

　　"Always advise us of shipments, stating kind of grain, num-

ber and date of contract to be applied on, and number of bushels in car.

"When shipments are not made according to contract, we reserve the right, without further notice, to extend the time of shipment, or cancel the sale, or buy in the grain for shipper's account, unless at your request previous to expiration of limit of time of shipment other arrangements are made covering your failure to make shipment within specified time of original contract.

"Inspection, trackage and exchange charges to be paid by shipper. All cars must be loaded to capacity. In referring to this purchase, please use this contract No. ........................

"Yours truly, J. Rosenbaum Grain Co.,

"By ................................................

"No. 3, 58lb. or better, 1 cent off; 57lb. 2 cents off; 56lb. 3 cents off. No. 4, 55lb. or better 4 cents off; 54lb. 5 cents off; 53lb. 6 cents off; 52lb. 7 cents off. Anything below No. 4 will be taken into account according to quality and condition if merchantable."

Defendant by answer made general denial of the allegations of plaintiff's petition. The case was tried to a jury, who returned a verdict in favor of defendant.

*C. J. Wrightsman, James B. Diggs, Chas. E. Bush,* and *R. L. Denton,* for plaintiff in error.

*A. M. Mackey,* for defendant in error.

HAYES, J. (after stating the facts as above). Plaintiff insists upon reversal of this case upon two grounds: First, that the court erred in not granting plaintiff a new trial, for the reason that the verdict of the jury is not supported by sufficient evidence, and is contrary to law; second, that the court erroneously gave to the jury an instruction which we shall discuss later.

It is contended by defendant as his defense that the written confirmation of purchase mailed by plaintiff to defendant after each purchase was not part of the contract of sale between the defendant and plaintiff, and, further, that the wheat upon arrival at Ft. Worth was not properly graded. The charges of plaintiff in his account against defendant were made for shortage in

weights and grades of the grain as weighed and graded at Ft. Worth, Tex. Each transaction between the parties was initiated by an agent of the plaintiff located at Enid, who testified that he, daily and weekly, sent cards to defendant making offers of purchase of wheat at stipulated prices; that most of the purchases were made by one or the other of the parties calling the other over the telephone and closing the deal; and that immediately upon any such transaction between him and the defendant he reported the same to his principal office at Ft. Worth, Tex. The testimony further discloses that, upon receipt of such reports from its agent at Enid, plaintiff immediately, or soon thereafter, forwarded to defendant written confirmation of such purchase containing the terms and conditions of the form attached to plaintiff's amended petition. The agent of the defendant, on the other hand, testified that the sales by it to plaintiff were made by transactions over telephone between it and the plaintiff's agent at Enid; that the grade of wheat sold by it to plaintiff was to be No. 2 hard wheat, and that each car shipped by it to plaintiff was No. 2 hard wheat, and that the same was weighed through defendant's hopper scales into the cars, and properly weighed and that the letters of confirmation from the plaintiff were not received by it in many instances, if in any instance, until after the shipments had gone forward. Upon the phase of the case as to whether plaintiff's confirmations of purchase were parts of the contracts of purchase, there is conflict in the evidence, and the court properly submitted this question to the jury upon an instruction which was requested by the plaintiff in the following language:

"If you believe from the preponderance of all the evidence that the different purchases of wheat by the plaintiff from the defendant was to be settled and governed by the written confirmation of purchase introduced in evidence, then the rights of the parties are to be governed by said written contracts, and the weights and grades and conditions of such contract are binding upon both parties."

The evidence as to the grades and weights of the various ship-

ments at Ft. Worth come entirely from witnesses of plaintiff, but the evidence of plaintiff's witnesses as to the grading of one or two cars on which a rebate of 11 cents per bushel is charged by plaintiff against defendant is not without conflict. The inspector who inspected all of said wheat testified that the classification by him of the wheat in one of said cars as "no grade" was for the reason that said car of wheat was badly mixed with corn. It developed, however, in the testimony of this same witness that he inspected this car of wheat twice; that his first classification of it was as hard wheat No. 2, testing 59 pounds to the bushel; that after about 500 bushels of the wheat had been emptied from said car he reinspected the car, and found in one corner of same wheat badly mixed with corn, and he thereupon regraded the wheat as "no grade" wheat, for which plaintiff charged defendant back on the contract price 11 cents per bushel on the entire car of wheat. The testimony is that 500 bushels of wheat unloaded from the car subsequent to the first inspection and prior to the second inspection was of the grade contracted for, and that of the wheat remaining in the car at the time of the second inspection but 200 bushels was affected by mixture with corn, that its being mixed with corn was the only reason for grading it as "no grade" wheat, and the only reason for grading the entire car as "no grade" wheat was because of this mixture of some of the grain in the corner of the car with corn. The wheat was graded under the rules of the Boards of Trade of Galveston and Kansas City, which rules prescribe that "no grade" wheat should consist of grain that is wet, hot, or in a heated condition, badly mixed with other grain, or various substances, and impregnated with some odor, weevily or weevily-eaten. An employee of defendant who loaded said car in which said wheat mixed with corn was found testified that there was but very little of the wheat in which there was any corn, and that said wheat was not badly mixed with corn, and that in the entire car there did not exist over a bushel and a half of corn. Under the state of the evidence, as to whether the letters

of confirmation of sale in which it was stipulated that Ft. Worth grades and weights should control were a part of the contract, and, as to the proper grading of the wheat at Ft. Worth, we do not think the court erred in refusing to set aside the verdict of . the jury, for the reason that it was not supported by the evidence. It is a well-settled rule in this jurisdiction that, where there is any evidence tending reasonably to support the verdict of the jury, the court will not interfere. *Brock v. Williams et al.*, 16 Okla. 124, 82 Pac. 922; *Puls v. Casey*, 18 Okla. 142, 92 Pac. 388.

The court upon request of defendant, and over the objection of plaintiff, gave the following instruction to the jury:

"If you find from the evidence that the defendant contracted to sell and deliver to the plaintiff at Ft. Worth, Tex., wheat of a certain grade to be paid for by the plaintiff at a certain price, and if you further find that the defendant delivered the wheat so contracted for but that the plaintiff claimed the wheat so delivered was not of the grade contracted for, then you are instructed, it was the duty of the plaintiff to notify the defendant of its claim before receiving the wheat, and if you further find that the plaintiff receiving the wheat so delivered and unloaded the same into its elevator, and converted the same to its own use, before notifying the defendant or giving the defendant an opportunity to replace the wheat with other wheat of the kind and grade contracted for, then your verdict must be for the defendant, unless you further find from the evidence that the plaintiff and defendant contracted the manner in which the wheat purchased should be settled for."

The language of this instruction is inaccurate for the purpose of adapting it to the evidence before the jury, but the idea it conveys to us, and which we think it would reasonably convey to any jury, is that the jury, if it found that the defendant contracted with plaintiff to sell and deliver to it wheat of a certain class—that is, hard wheat No. 2—and defendant did deliver wheat to plaintiff, but not of the grade contracted for, then, before plaintiff could claim a reduction in price for same, it must have before receiving the wheat notified defendant of plaintiff's objection to the grade of the wheat. This instruction in effect is that

the purchaser under an executory contract with a warranty by the seller as to grade or character of the property sold cannot receive the same if such property is not of the grade and character warranted and sue on breach of warranty for damages without first having given notice to the vendor and offered to return the property. Such is not the law. In this case there is no controversy whatever that the wheat defendant agreed to sell to plaintiff and the wheat contracted for by plaintiff from defendant was to be hard wheat No. 2. If defendant failed to carry out its contract by delivering to the plaintiff wheat not of the grade contracted, and thereby breached its warranty as to the grade of the same, plaintiff was not bound upon receipt of the wheat to give defendant notice of the condition thereof and an opportunity to replace it with the grade of wheat contracted.

In 2 Mechem on Sales, § 1811, it is said:

"In the ordinary case of breach of warranty, either express or implied, notice of the defect or an offer to return the property to the seller is not in any respect a condition precedent to the buyer's right to maintain an action for the breach of warranty."

In *Dayton v. Hooglund,* 39 Ohio St. 671, the court held that "in a suit for the price of a lot of iron manufactured by the plaintiff for the defendant the defendant, in case there is a breach of warranty as to the quality of the iron, may recoup for such damages as he has sustained, although he has used the iron without offering to return it."

In *Graff v. Osborne & Co.,* 56 Kan. 162, 42 Pac. 704, the Supreme Court of that state says:

"Where merchandise is sold under an executory written contract, and the goods delivered are inferior in quality to those contracted to be sold, the buyer is not restricted in his remedy to a return of the goods and rescission of the contract, but may retain the inferior articles delivered, and, in an action for the purchase price, may recoup the damages he has sustained by reason of the breach of the seller's contract."

Other cases in which this rule has been applied are *Tacoma*

*Coal Co. v. Bradley,* 2 Wash. 600, 27 Pac. 454, 26 Am. St. Rep. 890; *Underwood v. Wolf,* 131 Ill. 425, 23 N. E. 598, 19 Am. St. Rep. 40; *English et al. v. Spokane Com. Co.,* 57 Fed. 451, 6 C. C. A. 416; also 24 Am. & Eng. Ency. of Law, 1158, and authorities there cited; 2 Benjamin on Sales, p. 1156.

This instruction was error. Plaintiff does not contend that he ever gave to defendant notice of the defect in the grade of said wheat before it received same and unloaded it into its bins. The giving of this instruction by the court was therefore tantamount to instructing the jury to return a verdict for defendant although it should find that the defendant had contracted to deliver wheat of a specified grade and that the wheat delivered by the defendant was of an inferior grade, for the reason that no notice was given the defendant of such defect in the wheat prior to the time plaintiff received the same, and converted it to its own use. For the error of the court in giving this instruction, the case should be reversed; and it is so ordered.

All the Justices concur.