# T. H. ROGERS LUMBER CO. v. M. W. JUDD LUMBER CO., *Inc.*

No. 4970.     Opinion Filed November 16, 1915.

(153 Pac. 150.)

1. **TRIAL—Demurrer to Evidence.**  One interposing a demurrer admits all the facts which the evidence tends to prove, and all the inferences or conclusions which may be reasonably and logically drawn therefrom.  Therefore, where a petition states a cause of action and the proof fairly sustains same, it is not error to deny demurrer to the evidence.

2. **SALES—Breach of Warranty—Remedy of Buyer.**  The law in this state is that where personal property is sold, such as shingles, backed by warranty as to quality and, in particular, to give satisfaction, the purchaser may, in good faith, retain the article, and, if found inferior, recoup proper damages sustained, and he need not, as a rule, return the same or notify the seller.  Prompt and timely notice, however, is very indicative of good faith and common honesty.

(Syllabus by Watts, C.)

*Error from County Court, Oklahoma County;*
*John W. Hayson, Judge.*

Action by the M. W. Judd Lumber Company against the T. H. Rogers Lumber Company.  Judgment for plaintiff, and defendant brings error.  Reversed and remanded.

*Keaton, Wells & Johnson,* for plaintiff in error.

*Asp, Snyder, Owen & Lybrand* and *J. K. Wright,* for defendant in error.

Opinion by WATTS, C.  Defendant in error sued the plaintiff in error in the county court of Oklahoma county.  Parties will be referred to as they appeared below.  After plaintiff's evidence defendant interposed a demurrer, which was denied, and after defendant's evidence, plain-

tiff demurred, which demurrer was sustained, and judgment rendered accordingly for the plaintiff. Motion for new trial was denied, and defendant appealed, assigning error: (1) In overruling the demurrer to the plaintiff's evidence; (2) in sustaining plaintiff's demurrer to defendant's evidence; (3) in rendering judgment for plaintiff for any sum; (4) in overruling the motion for new trial.

1. We do not think the first assignment is well taken. Plaintiff's petition stated a cause of action, and the proof fairly sustains it.

2. But the remaining assignments, which may be considered together, are more difficult. It appears that the plaintiff was a wholesale lumber broker at Seattle, Wash., which had agents, Jackson and Burton, in Oklahoma City; that the defendant was a wholesale lumber dealer at Oklahoma City, with yards at divers places in the state; that in December, 1910, the plaintiff sold the defendant four carloads of shingles as follows: First car to Eufaula, ordered December 20, 1910, shipped January 5, 1911, paid for February 17, 1911; second car to Hallett, ordered December 21, 1910, sent from Erie, Wash., invoiced January 3, 1911, paid for February 18, 1911; third car to Oktaha, ordered December 31, 1910, shipped January 14, 1911, from Ballard, Wash., paid for March 18, 1911. The defendant also had a yard at Coffeyville, Kan., and the fourth car was shipped to that place; date of sale was March 6, 1911; shipped March 16, 1911; paid for, less damages claimed, May 18, 1911. The evidence does not show date of arrival of each of the cars, but defendant estimates ten days from date of invoice or shipment, which is not challenged and appears reasonable. Therefore we will assume the respective cars arrived at above places, January 15, 13, 24, and March 26, 1911,

respectively. These sales were made by the agents, who at the time had been furnished circulars by the plaintiff and who, at the beginning of the negotiations, in turn furnished one to defendant. The material part is as follows:

| | |
|---|---|
| M. W. Judd<br>Lumber Co.<br>Inc.<br>5/2<br>6/2 16"<br>Clear Butts<br>Seattle, Wash. | We wish to announce that we are now putting on the market the products of our new mills: The "Black Cat" Brand of 5/2-16"-10" Clear Butts. These are the best of Second Grade Shingles and if you have a market for such first-class stock, then please try our new brand now. We guarantee satisfaction, so you cannot make a mistake. Every bunch of our 10" clears is neatly branded "Black Cat." Listen for the "Black Cat." |

The agents were also directed by letters, and did represent to defendant, as an inducement to purchase, that the shingles would lay a roof practically as good as Extra Star A Star brand, and that it would be thicker, being 10-inch clear butts, and that they would double lap and lay just as good a roof as the Extra Star A Star brand, and that they were graded according to the official grading rules of the Red Cedar Association.

We think the case turns upon a correct answer as to whether defendant, because of a material breach of warranty as to the quality of the shingles, after receiving and paying for three cars in due and ordinary course, can, in payment of the fourth car, deduct and withhold a just and reasonable amount as compensation occasioned by the breach. Plaintiff says not, because defendant did not, immediately upon arrival of the shingles, technically inspect same and advise plaintiff of the defects, while defendant says the defects were not known at the time of payment, nor until after the last car had been ordered, when complaints were made and upon examination found meritorious, then notice given. Counsel for plaintiff cite, in support of their contention, *Neff v. McNeeley et al.*,

1 Neb. (Unof.) 416, 96 N. W. 150; *Luger Furn. Co. v. Street*, 6 Okla. 312, 50 Pac. 125; *Sisson L. & S. Co. v. Haak*, 139 Mich. 383, 102 N. W. 946; *McClure v. Jefferson et al.*, 85 Wis. 208, 54 N. W. 777; *Reed v. Randall*, 29 N. Y. 358, 86 Am. Dec. 305; *Nelson et al. v. Overman* (Ky.) 38 S. W. 882; *Patrick v. Norfolk Lumber Co.*, 81 Neb. 267, 115 N. W. 780; *Bannon v. St. Bernard Coal Co.* (Ky.) 39 S. W. 252; *Jones et al. v. McEwan*, 91 Ky. 373, 16 S. W. 81, 12 L. R. A. 399; *Scott v. Vulcan Iron Works*, 31 Okla. 334, 122 Pac. 186.

Defendant cites *Hefner v. Haynes*, 89 Iowa, 616, 57 N. W. 421; *Rosenbaum Grain Co. v. Pond Creek Mill & Elev. Co.*, 22 Okla. 555, 98 Pac. 331; *Tacoma Coal Co. v. Bradley*, 2 Wash. 600, 27 Pac. 454, 25 Am. St. Rep. 890; *English v. Spokane Commission Co.*, 57 Fed. 451, 6 C. C. A. 416; *Bowers' Rubber Co. v. Blasdel* (Calif.) 47 Pac. 931; *Graff v. D. M. Osborne & Co.*, 56 Kan. 162, 42 Pac. 704; *D. M. Osborne & Co. v. Walther*, 12 Okla. 20, 69 Pac. 953; *Underwood v. Wolf*, 131 Ill. 425, 23 N. E. 598, 19 Am. St. Rep. 40; *White v. Oliver*, 32 Okla. 479, 122 Pac. 156; *Frey v. Failes*, 37 Okla. 297, 132 Pac. 342; *Woolsey v. Zieglar*, 32 Okla. 715, 123 Pac. 164.

After a careful study of the cases cited we must hold that the trial court committed error in sustaining the demurrer to the defendant's evidence. We think the law in this state is that, where personal property is sold, such as shingles, backed by warranty as to quality and, in particular, to give satisfaction, the purchaser may, in good faith, retain the article and, if found inferior, recoup proper damages sustained, and he need not, as a rule, return the same or notify the seller. Prompt and timely notice, however, is very indicative of good faith and common honesty.

In the case at bar the evidence of defendant is overwhelming that the shingles arrived apparently as warranted, with no defects noticeable from the outside; that payments were made in due course without knowledge of defects; that, upon sale to the trade, complaints therefrom, and examination, they were found very inferior and not up to the grade. Of course, they were not sold as first grade, but the best of second grade. They were a new brand of shingles in the respective communities, and plaintiff was anxious to get them on the Oklahoma market, and requested its agents to highly commend them, and, in addition to the warranty in the circular, guaranteed, among other things, that they would lay a roof practically as good as the Extra Star A Star brand, etc.

A sample of the shingles was brought into court and if the numerous witnesses for defendant are to be believed, at least one-third of the Oktaha and Hallett cars were culls and absolutely worthless. One witness testified that where, as a rule, from 12,000 to 15,000 shingles were sufficient to cover his house, this brand required 21,000.

Under the facts, we take it by the words, " We guarantee satisfaction" it was not only contemplated, but contracted, that a reasonable time would be given to see if the trade was satisfied with the shingles. As against this position, counsel for plaintiff contend it was the duty of defendant, on arrival of each car and before remitting, to technically inspect the shingles and report defects, if any, to plaintiff; that because the shingles were unloaded and put on the market, and a portion sold, without discovering defects, defendant waived its rights, and is estopped from claiming and recouping damages. Under a state of facts calling for prompt, technical, and immediate inspection, cases may be found sustaining that posi-

tion, but in the case at bar, no such exigencies existed. Defendant was not required to go to extremes and cut the bales in order to ascertain their condition, but had a right to rely on the warranty, await developments, and recoup its just damages at the suit of plaintiff. In *Rosenbaum Grain Co. v. Pond Creek Mill & Elev. Co.*, 22 Okla. 555, 98 Pac. 331, the rule is stated:

"Where wheat is sold under an executory contract, and the wheat delivered is inferior in quality to that contracted to be sold, the buyer may retain the inferior wheat delivered, and recover the damages he has sustained by reason of a breach of the seller's contract, without returning the wheat, or giving any notice to the seller."

Therefore, for reasons given, we recommend a reversal of the judgment, and that new trial be granted.

By the Court: It is so ordered.